USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 94-1989 UNITED STATES OF AMERICA, Appellee, v. N. JOHN FONTANA, II, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ James L. Sultan with whom Rankin and Sultan was on brief for _________________ __________________ appellant. Jean L. Ryan, Assistant United States Attorney, with whom Paul M. ____________ _______ Gagnon, United States Attorney, was on brief for appellee. ______ ______________________ ____________________ March 28, 1995 ____________________ ALDRICH, Senior Circuit Judge. Appellant, N. John ____________________ Fontana, is one of a number of persons charged under 18 U.S.C. 471, 473 and 474 with the manufacture, possession and delivery of counterfeit United States currency. Fontana waived indictment and pled guilty pursuant to a plea agreement. He appeals from his sentence. Following execution of the plea agreement, Fontana cooperated fully with federal authorities. At sentencing, the government did not object to his requesting a three-level downward adjustment for prompt acceptance of responsibility, and it filed a motion for a four-level downward departure for his substantial assistance in further uncovering the scheme, pursuant to United States Sentencing Guidelines ("U.S.S.G.") 5K1.1. The court granted these motions, and they are not before us. However, the government recommended a three-level enhancement for a managerial or supervisory role under U.S.S.G. 3B1.1(b), and the court, in sentencing defendant, agreed. Fontana timely challenges the enhancement as a violation of U.S.S.G. 1B1.8, that he alleges protects him from the use of information he provided pursuant to his plea agreement. We review a district court's legal interpretation of the sentencing guidelines de novo, United States v. _______ ______________ Ovalle-Marquez, 36 F.3d 212, 221 (1st Cir. 1994), and its ______________ fact-bound determinations of defendant's role in the offense -2- for clear error. Id. at 225; United States v. Jadusingh, 12 __ _____________ _________ F.3d 1162, 1169 (1st Cir. 1994). The sentencing guidelines mandate a three level upward adjustment if the government demonstrates that (1) the defendant was a supervisor or manager, and (2) the criminal scheme involved five or more persons, or was otherwise extensive. Ovalle-Marquez, 36 F.3d at 225. See U.S.S.G.  ______________ ___ 3B1.1(b). Neither "supervisor" nor "manager" is defined under 3B1.1, but it is sufficient that a defendant recruited, instructed or supervised at least one other person. United States v. Rodriguez Alvarado, 985 F.2d 15, 20 _____________ __________________ (1st Cir. 1993). The court's so finding here was clearly warranted. Fontana does not dispute that he recruited and directly supervised a Mr. Aquire. The issue is whether the participation of Aquire, and Fontana's supervision of him, was properly available to the district court to consider in calculating his sentence. In his plea agreement, Fontana promised to cooperate in all government investigations and prosecutions of others involved in the counterfeiting operation. In turn, the government made three specific promises: In exchange for his plea and cooperation, the Government agrees: (1) that it will not object to an appropriate reduction for acceptance of responsibility . . . ; (2) that it will file a Motion pursuant to U.S.S.G. 5K1.1 on the defendant's behalf at the time of sentencing if the defendant provides substantial assistance -3- in the investigation and prosecution of others. . . . ; (3) that it is not aware of more than 1.5 million dollars in counterfeit U.S. currency in the instant case and that under U.S.S.G. 1B1.8 if the defendant provides information which leads to the discovery of more, it will not be used against him to determine his adjusted offense level. Defendant challenges the three-level enhancement on the ground, inter alia, that the court could not find five _____ ____ participants as "counters." Since the court agreed that it could not count Fontana's wife, it must have considered Aquire in order to meet 3B1.1(b)'s requirements. (The government contended that there were five who had not been disclosed, but, on the record, it is mistaken.) The court, accordingly, in order to find five, may have interpreted the plea agreement as not standing in the way because of Fontana's identifications. In any event, without comment, it found five. We think this interpretation accords with the plain reading of the agreement. Examination shows no promise by the government not to use information about the involvement of other individuals except where such information led to the discovery of more than the $1.5 million counterfeit of which it was already aware. (None was.) A single, limited, promise manifestly cannot be construed into a general one across the board. Plaintiff was promised a willingness to recommend downward reductions for acceptance of -4- responsibility and for cooperation, but the only upward exemption (item 3), was that if his disclosures led to finding more counterfeit currency than the government already knew of, they should not be used against him in calculating his offense level. Section 1B1.8(a) of the guidelines provides: Where a defendant agrees to cooperate _____ with the government by providing information concerning unlawful activities of others, and as part of that _______________ cooperation agreement the government _________________________________________ agrees that self-incriminating _________________________________________ information provided pursuant to the _________________________________________ agreement will not be used against the _________________________________________ defendant, then such information shall _________ not be used in determining the applicable guideline range, except to the extent provided in the agreement. (Emphasis supplied). U.S.S.G. 1B1.8(a). We do not read from this a promise relating to the disclosure of any participant, unless it led to the discovery of more counterfeit currency. Evidently the court may have felt the same. We have, however, a singular situation. Not only did Fontana read his agreement as excluding for all purposes individuals disclosed by him, but the government agreed. This calls for consideration. While in its terms the agreement does not support Fontana, plea agreements, involving possible misapprehension by defendants under stress, may invite equitable adjustments at the district court's discretion. Cf. United States v. Kinsey, 917 F.2d __ ______________ ______ -5- 181 (5th Cir. 1990); United States v. Wilder, 15 F.3d 1292, _____________ ______ 1296-97 (5th Cir. 1994); United States v. Fields, 766 F.2d _____________ ______ 1161, 1168 (7th Cir. 1985). We particularly believe discretion should be considered here because at sentencing, defendant's position with respect to Aquire was agreed to by the government. We cannot deal adequately with this on this record. In view of its silence we cannot tell whether the court chose, equitably, to adopt defendant's interpretation of the agreement and found, erroneously, that there were five or more independent participants, or whether it read the agreement as written in spite of the government's acquiescence, which it was free to do. The sentence is vacated, and the case remanded to the district court for further proceedings consistent with this opinion. So ordered. -6-