UNITED STATES, Appellee,

v.

**Blas CAMILO, Defendant–Appellant.**

No. 95–1565.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1995.

Decided Dec. 18, 1995.

---

Michael J. Iacopino, Manchester, N.H., with whom Timothy I. Robinson, Concord, N.H., and Brennan, Caron, Lenehan & Iacopino, Manchester, N.H., were on brief for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, and CYR and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

Defendant-appellant Blas Camilo ("Camilo") appeals his sentence of 96 months given at his resentencing hearing of May 2, 1995. In *United States v. Camilo,* 30 F.3d 126 (1st Cir.1994), this court affirmed his convictions for violations of 21 U.S.C. § 841(a) and § 846 pursuant to a final judgment entered on January 3, 1994 by the district court, and remanded for the resentencing that is the origin of this appeal. For the reasons set forth below, we affirm.

## BACKGROUND

The facts, which are derived from the presentence investigation reports as well as the oral and documentary evidence introduced at the sentencing and resentencing hearings, are as follows.

Camilo was indicted with two co-defendants on July 2, 1993. He was charged in count one with conspiracy to distribute cocaine base (or "crack") in violation of 21 U.S.C. § 846, and in counts two and three with distributing cocaine base on April 22, 1993 and May 12, 1993, in violation of 21

U.S.C. § 841(a)(1).[1] On October 4, 1993, Camilo pled guilty to count three pursuant to a written plea agreement, and counts one and two were dismissed. For count three, Camilo was sentenced on January 3, 1994 to ten years of imprisonment and five years of supervised release. Camilo appealed this sentence, and on August 8, 1994, the Court remanded this case for resentencing pursuant to the agreement of both parties at oral argument, based primarily on a change in the sentencing recommendation policy of the United States Probation Office pertaining to § 841(b) penalties. *See* 21 U.S.C. § 841(b) (specifying penalties for 21 U.S.C. § 841(a) violations). In the wake of *United States v. Darmand,* 3 F.3d 1578, 1581 (2d Cir.1993), the Probation Office accordingly recommended that the mandatory minimum sentences under 21 U.S.C. § 841(b)(1) be based only on the drug quantities involved in the offenses of conviction.

■ At Camilo's resentencing hearing on May 2, 1995, the district court assessed Camilo with two additional criminal history points because, at the time that he committed the instant offense, he had an outstanding Massachusetts warrant for a probation violation. Camilo challenges this decision as error. Additionally, Camilo argues that because cocaine powder and crack are scientifically identical, the United States Sentencing Guidelines' ("the Guidelines'") distinction between the two forms of cocaine produces statutory ambiguity. Therefore, argues Camilo, under the rule of lenity,[2] he should receive the lighter penalty for cocaine powder rather than the heavier penalty for crack, the substance which he was in fact convicted of distributing.

## DISCUSSION

### A. The Criminal History Computation

■ We review a district court's legal interpretation of the Guidelines *de novo, United States v. Fontana,* 50 F.3d 86, 87 (1st Cir.1995); *United States v. Ovalle–Márquez,* 36 F.3d 212, 221 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1322, 131 L.Ed.2d 202 (1995), and its fact-bound determinations of defendant's actions with respect to the offense for clear error. *Fontana,* 50 F.3d at 87; *Ovalle–Márquez,* 36 F.3d at 225. Furthermore, the government carries the burden of showing the facts necessary to justify additional criminal history points. *United States v. Roberts,* 39 F.3d 10, 13 (1st Cir.1994).

The Guidelines specify that, in determining the Criminal History Category, the sentencing court shall add two points to a defendant's criminal history category "if the defendant committed the instant offense while under any criminal justice sentence, including probation." United States Sentencing Commission, *Guidelines Manual,* § 4A1.1(d) (1994). Section 4A1.2(m) defines the effect under § 4A1.1(d) of an outstanding warrant for a probation violation as follows:

> For the purposes of § 4A1.1(d), a defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.,* a probation, parole, or supervised release violation warrant) *shall be deemed to be under a criminal justice sentence* for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such a warrant.

§ 4A1.2(m) (emphasis added); *see also* § 4A1.1(d), comment. (n. 4) (explaining the effect of a violation warrant "[f]or the pur-

---

**1.** Section 841(a)(1) provides that:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to ... distribute ... or possess with intent to ... distribute ... a controlled substance....

Section 846 provides that:

Any person who attempts or conspires to commit any offense defined in this subchapter [including § 841(a)(1)] shall be subject to the same penalties as those prescribed for the of-

fense, the commission of which was the object of the attempt or conspiracy.

**2.** The rule of lenity mandates the resolution of ambiguities in a criminal statute favorably to the defendant. *United States v. Gibbens,* 25 F.3d 28, 35 (1st Cir.1994); *United States v. O'Neil,* 11 F.3d 292, 301 n. 10 (1st Cir.1993). The rule is a background principle which casts the decisive vote when all else fails to bring sufficient lucidity to the meaning of a penal statute. *Gibbens,* 25 F.3d at 35.

poses of [§ 4A1.1(d) ]" in language almost identical to the above block quote).

We conclude, and Camilo does not dispute, that the sentence of two years' probation which the evidence shows was imposed on him on June 28, 1989 was "otherwise countable" under § 4A1.1(d).[3] Section 4A1.1(d) specifically includes "probation" as a "criminal justice sentence" triggering the additional two points. Furthermore, § 4A1.2(m) clearly indicates that, for § 4A1.1(d) purposes, an outstanding violation warrant is to be considered the equivalent of the criminal justice sentence under which it issued, even if that sentence would otherwise have expired absent such warrant.

■ Given the clarity of the relevant Guidelines, the issue would seem to hinge simply on whether an outstanding warrant existed, and the evidence supports the district court's finding that it did. Sufficient evidence supports the district court's conclusion that the outstanding warrant in question was issued on May 2, 1991, almost two months before Camilo's probation would have expired. However, Camilo argues that the required inquiry is not so simple. First, citing precedents from other circuits, he contends that the government must show that, under the law of the prior sentence's origin (here, Massachusetts), the warrant is not stale and the issuing court retains jurisdiction to revoke the defendant's probation. *See United States v. Lee,* 941 F.2d 571, 572–73 (7th Cir.1991) (discussing Missouri law); *United States v. Baty,* 931 F.2d 8, 10–11 (5th Cir.1991) (discussing Texas law). Second, Camilo asserts that, under Massachusetts law, the outstanding warrant was invalid for the purpose of additional criminal history points, because the government failed to present evidence that it made reasonable attempts to execute the warrant.

We reject Camilo's proposition, which he contends to be the law in the Fifth and Seventh Circuits, that the Guidelines' otherwise unambiguous direction is necessarily qualified by an additional showing under state law. We decline to follow the cited cases because both cases were decided before the effective date of Amendment 381 to the Guidelines, November 1, 1991, which added both § 4A1.2(m), discussed above, and § 4A1.1, comment. (n. 4).[4] *See* USSG App. C, pp. 261–62, 264 (Nov. 1994); *Lee,* 941 F.2d at 571 (decided August 26, 1991); *Baty,* 931 F.2d at 8 (decided April 26, 1991). Not surprisingly, neither case mentions either § 4A1.2(m) or § 4A1.1, comment. (n. 4), which were to become effective on November 1 of 1991, the year in which both cases were decided. *Lee,* 941 F.2d at 571; *Baty,* 931 F.2d at 8.

Instead, we follow the reasoning of a case not cited by either party, *United States v. Renfrew,* 957 F.2d 525 (8th Cir.1992). In that case, the Eighth Circuit stated that whether a defendant was under a criminal justice offense was ultimately a matter of federal law:

> Although we agree that state law is relevant to the question before us, our ultimate task is to determine whether [the defendant] was 'under' a criminal justice sentence for purposes of § 4A1.1(d). That is a question of federal law.

*Id.* at 526–27 (affirming the addition of two points to defendant's criminal history category based on either or both Minnesota law and § 4A1.1(d), comment. (n. 4)). In *Renfrew,* the Eighth Circuit determined that regardless of whether it focused on Minnesota state law or on a Sentencing Commission "postsentence clarifying amendment," *see* § 4A1.1(d), comment. (n. 4), the defendant was under a

---

**3.** The words "otherwise countable" in § 4A1.2(m) appear to refer exclusively to the fact that certain enumerated offenses are excluded for the purposes of § 4A1.1(d). These exceptions, explained in §§ 4A1.2(c)–(j), do not apply in the instant case. *See, e.g.,* § 4A1.2(c) (entitled "Sentences Counted and Excluded"); § 4A1.2(i) ("Sentences resulting from tribal court convictions are not counted"); § 4A1.2(j) ("Sentences for expunged convictions are not counted").

**4.** We note in passing that Shepard's Citation Service indicates that *Baty* has only been cited by *Lee,* and *Lee* in turn has been cited by only one other case, *United States v. Davis,* 797 F.Supp. 672, 675–76 (N.D.Ind.1992) (undertaking *Lee*-directed state law inquiry into outstanding warrant and finding under that rubric that the instant defendant's outstanding warrant sufficed under § 4A1.1(d) for additional two-point penalty in criminal history computation).

criminal justice sentence for the purposes of § 4A1.1(d).[5]

Unlike the defendant in *Renfrew*, however, Camilo's sentencing date, as well as his offending conduct, was subsequent to November 1, 1991, the effective date of both §§ 4A1.1(d), comment. (n. 4) and 4A1.2(m). As we have previously noted, the language of § 4A1.2(m) that is relevant to our analysis almost perfectly replicates that of § 4A1.1(d), comment. (n. 4), which was relied upon by the court in *Renfrew*. Unlike the court in *Renfrew*, we face no ex post facto problem in following § 4A1.2(m) rather than the § 4A1.1(d), comment. (n. 4).[6] *See* 18 U.S.C. § 3553(a)(4) (courts should consider the kinds of sentence and sentencing range specified by the Guidelines "that are in effect on the date the defendant is sentenced"); U.S.S.G. § 1B1.11(a) (courts are to use "the Guidelines Manual in effect on the date that the defendant is sentenced"). Most importantly, § 4A1.2(m) is not an application note but a Guideline definition; as such it is not merely persuasive, but is in fact binding authority for our interpretation of § 4A1.1(d).

Given that the plain language of § 4A1.2(m) is mandatory for our purposes, and that both federal and state law analyses lead us to the same conclusions, we therefore need not determine here which analysis—federal or state—is indeed required. Thus, as the court in *Renfrew* did before us, we follow both lines of analysis without determining whether the state law inquiry is mandatory.

■ We turn first to federal law. As a matter of federal law, it may be argued that a delay in the execution of a violation warrant may be so unreasonable that the defendant cannot be said to be under a criminal justice sentence for purposes of § 4A1.1(d).[7] We need not decide whether such a reasonableness requirement exists in this case, however, because under the facts of this case it would not benefit Camilo. The argument described above would not apply where the delay is attributable in significant part to the defendant's own wrongful actions. *Cf. United States v. Fisher*, 895 F.2d 208, 211 (5th Cir.1990); *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir.1983) (considering it important that the defendant had not contributed to the delay). As the record shows, such is the case here.

After Camilo was defaulted on his probation in January 1991, notice of surrender was sent to Camilo's last known address, 42 East Haverhill Street, Lawrence, Massachusetts, informing him of a March 27, 1991 probation violation hearing. That hearing was continued until May 2, 1991. It is undisputed that Camilo failed to show up for the May 2, 1991 hearing, and the district court properly found that he had notice of the hearing. Camilo also failed an April 17, 1991 court-ordered urinalysis and was ordered to pay the testing fee and to report for another urinalysis at the testing site. He failed to show up for the second urinalysis. When the warrant was issued following the May 2, 1991 default, the Essex County Probation Office, which still had an address for Camilo in Lawrence, forwarded the warrant to the Lawrence Police Department for execution. However, Camilo had moved to Salem, New Hampshire sometime in 1990 but had never notified the Essex

---

**5.** *Renfrew*, 957 F.2d at 527 ("[W]hether we focus on [Minnesota law on revocation of probation] or the Sentencing Commission's interpretation [in § 4A1.1(d), comment. (n. 4),] of the phrase 'under any criminal justice sentence,' we think it clear that the district court was correct in adding two points to Renfrew's criminal history category calculation under § 4A1.1(d)."), *citing* § 4A1.1(d), comment. (n. 4).

**6.** There is a possible explanation, admittedly not included in either amendment 381's text or its accompanying statement of purpose, for why § 4A1.2(m) repeats almost verbatim the language of § 4A1.1(d), comment. (n. 4). The Sentencing Commission may have intended the application note as a post-sentencing clarifying amendment to guide courts reviewing sentences handed down before November 1, 1991, while § 4A1.2(m), an actual Guideline, was intended to compel the result we reach here for sentences dating from after November 1, 1991.

**7.** It has been held that jurisdiction over a probation violator in the federal system generally does not extend indefinitely once a valid warrant is issued. *See United States v. Hill*, 719 F.2d 1402, 1404 (9th Cir.1983). Due process requires that a warrant for a probation violation be executed within a reasonable time after issuance. *See id.* at 1405. A similar requirement may exist under § 4A1.1(m).

County Probation Office that he had left the state. During this time Camilo also used a number of aliases, including "Chicky," "Angel Castillo," and "Blas Alberto Camilo Caraballo." The facts of record show that Camilo simply made himself scarce during the time the warrant was outstanding. For these reasons, therefore, Camilo cannot benefit from any putative staleness of the warrant. *See Fisher*, 895 F.2d at 211; *Hill*, 719 F.2d at 1405.

Even assuming that such an inquiry is necessary, Camilo also cannot avail himself of Massachusetts state law. Recently, the Supreme Judicial Court stated that, in the context of determining the fairness of the revocation of a defendant's parole, one consideration is "the extent to which the parolee reasonably relied on the inaction of the enforcing authorities." *In re Zullo*, 420 Mass. 872, 876, 653 N.E.2d 150, 152 (1995). As noted above, Camilo could not reasonably have relied on the inaction of the enforcing authorities. He failed to appear at a hearing of which he had notice. Moreover, his own actions in leaving the state without notification and in using aliases thwarted the Essex County Probation Office's and the Lawrence Police Department's attempts to contact him.

Upon review for clear error, we conclude that the district court received sufficient evidence to find that Camilo had a probation violation warrant outstanding. Under our de novo review of the Guidelines, we hold that regardless of whether we must focus on § 4A1.2(m) or Massachusetts state law, we must affirm the district court's criminal history computation.

## B. The Distinction Between Crack and Cocaine Powder

Camilo also argues that the district court erred in denying his motion for a downward departure pursuant to USSG § 5K2.0 and 18 U.S.C. § 3553(b). Camilo's argument comprises two parts, each of which is essential to success. First, he contends that the district court improperly construed its discretion to depart downward, and thus its decision to deny the departure should be subject to plenary review on appeal.[8] Second, Camilo contends that a departure was warranted because the United States Sentencing Commission (the "Sentencing Commission") failed to comply with its enabling legislation[9] by adopting Congress' previously established 100–to–1 ratio in the Guidelines' mandatory minimum penalties for cocaine distribution, U.S.S.G. § 2D1.1, without fully investigating the circumstances underlying the ratio.

However, we need not dwell on the first part of Camilo's argument. Even assuming, arguendo, that plenary review applies, we reject the equally crucial second part. Camilo asserts that a recently released Sentencing Commission report disapproving the 100–to–1 ratio constitutes a tacit admission that the Sentencing Commission was derelict in its duty. United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (February 1995). In that report, the Sentencing Commission "firmly concludes that it cannot recommend a ratio differential as great as the current 100–to–1 quantity ratio." *Id.* at 196. Furthermore, Camilo bolsters this argument by noting that the Sentencing Com-

---

**8.** *See United States v. Gifford*, 17 F.3d 462, 473 (1st Cir.1994) (noting that appellate jurisdiction may attach if it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to deviate from the Guideline range or, relatedly, from the court's misapprehension of the rules governing departures); *United States v. Rivera*, 994 F.2d 942, 951 (1st Cir.1993) (stating that "[p]lenary review is appropriate where the question on review is simply whether or not the allegedly special circumstances (i.e., the reasons for departure) are of the 'kind' that the Guidelines, in principle, permit the sentencing court to consider at all"); *cf. United States v. Pierro*, 32

F.3d 611, 619 (1st Cir.1994) (noting that "[i]t is by now axiomatic that a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the Guidelines sentencing range.").

**9.** Camilo cites "21 U.S.C. § 941, *et seq.*" as the Sentencing Commission's enabling legislation, but in fact there is currently no statute at that citation. However, 28 U.S.C. § 994(c), (d) mandates that the Sentencing Commission, in establishing categories of offenses for use in the Guidelines, consider a number of factors that would apply to the 100–to–1 ratio. 28 U.S.C. § 994(c), (d).

mission voted on April 13, 1995,[10] to eliminate the distinction in the Guidelines between "crack" and "powder" cocaine, and recommended to Congress that it revise the statutory penalty distinction between the two forms of cocaine. *See* 60 Fed.Reg. 25,074, 25,075–76 (1995). The Sentencing Commission concluded that "the [G]uideline provisions, as amended, will better take into account the increased harms associated with some crack cocaine offenses and, thus, the different offense levels based solely on the form of cocaine are not required." *Id.* Camilo asserts that because "crack" and "powder" cocaine are "synonymous" in the scientific and medical communities (his prospective defense witness is a medical doctor), the Guidelines' distinction between them is ambiguous, and therefore the rule of lenity mandates that he receive the lesser penalty. For legal support, Camilo relies on *United States v. Davis*, 864 F.Supp. 1303, 1309 (N.D.Ga.1994). On these grounds, argues Camilo, the district court erred by denying his "Motion for Services Other than Counsel" and "Motion to Continue," thereby precluding Camilo from presenting evidence that "cocaine" and "cocaine base" are scientifically identical.

■ For two reasons, we reject the contention that the Sentencing Commission's acts or omissions compel a downward departure for Camilo, and thus we also reject any argument for expert testimony based on this theory. First, the rule of lenity argument fails for essentially the same reason that this circuit previously rejected the argument that scientific equivalence requires that crack offenders be given the same sentences as those who traffic in cocaine powder. *United States v. Singleterry*, 29 F.3d 733, 740 (1st Cir. 1994). In *Singleterry*, we concluded that health effects notwithstanding, crack in reality does differ from cocaine powder, not least importantly because its cheaper unit price could radically increase drug use absent stiffer penalties for crack distributors. *Id.* The similar medical effects from crack and co-

caine powder do not compel a finding of legal ambiguity, especially where there is evidence of differing effects on society.

■ Second, in light of recent legislative developments we conclude that the Sentencing Commission cannot be said to have failed in its statutory duty to investigate the distinction between crack and cocaine powder. In response to the Sentencing Commission's April 13, 1995 vote, the House of Representatives joined the Senate on October 18, 1995 in voting to retain the current mandatory sentence for possession of crack cocaine, maintaining disparate sentences for crack and powder cocaine possession. *See* Pub.L. No. 104–38, § 1, 109 Stat. 334, 334 (1995). And on October 30, 1995, the President signed this bill into law. *Id.* These actions preempt the Sentencing Commission's April 13, 1995 decision to eliminate the distinction between crack and cocaine powder from taking effect on November 1, 1995. *See* 28 U.S.C. § 994(p). In light of the October rejection of the Sentencing Commission's April amendment, we cannot accept the argument that the Sentencing Commission was derelict in its duty to weigh penalties.[11]

Accordingly, we find no abuse of discretion in the district court's decision not to grant a continuance to permit the presentation of live testimony on the crack-cocaine powder issue. *See United States v. Claudio*, 44 F.3d 10, 16 (1st Cir.1995) (reviewing for abuse of discretion district court's refusal to postpone sentencing to allow defendant's submission of live medical testimony).

The judgment of the district court is *affirmed.*

---

10. *See* 28 U.S.C. § 994(p) (providing that Sentencing Commission amendments are to take effect upon a certain date, unless an intervening Act of Congress rejects them).

11. Because Camilo was sentenced in May 1995, we need not confront any issue of pre-February 1995 Sentencing Commission failure to investigate.