UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-2289

UNITED STATES,

Appellee,

v.

BRADLEY OLIVER BOWEN,

Defendant - Appellant.



No. 96-2290

UNITED STATES,

Appellee,

v.

RINALDO TICCHIARELLI,
a/k/a RONALDO, a/k/a WHITNEY DOREY,

Defendant - Appellant.



APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Bownes and Cyr, Senior Circuit Judges. 



J. Bradford Coffey, by appointment of the Court, with whom 
Farrell, Rosenblatt & Russell was on brief for appellant Bradley 
Oliver Bowen.
G. Richard Strafer, with whom Qui on & Strafer, P.A. was on 
brief for appellant Rinaldo Ticchiarelli.
Margaret D. McGaughey, Assistant United States Attorney, 
with whom Jay P. McCloskey, United States Attorney, James L. 
Moore, Assistant United States Attorney, and Timothy D. Wing, 
Assistant United States Attorney, were on brief for appellee.



September 24, 1997


-2-

TORRUELLA, Chief Judge. This appeal presents an issue TORRUELLA, Chief Judge. 

of first impression, namely, whether the term "hashish oil" under

18 U.S.C. 841(b)(1)(D) and U.S.S.G. 2D1.1 is

unconstitutionally vague, or so ambiguous as to require the

application of the rule of lenity, as applied to conduct

occurring prior to a November 1995 amendment to the Sentencing

Guidelines that provided, for the first time, a definition for

the term.

Appellants were convicted for importing and

trafficking, prior to the Guideline amendment, in a controlled

cannabis-derived substance the precise classification of which

was left to be determined during sentencing. The sentencing

court determined the substance to be "hashish oil," as opposed to

"marihuana," and concluded that it was appropriate to apply a

fifty to one quantity conversion ratio under the Drug Quantity

Table of the Sentencing Guidelines. See U.S.S.G. 2D1.1(c). 

Finding that genuine ambiguity regarding the definition of

"hashish oil" prior to 1995 mandates the application of the rule

of lenity in this case, we reverse and remand for re-sentencing.

BACKGROUND BACKGROUND

Defendants-Appellants Bradley Oliver Bowen and Rinaldo

Ticchiarelli participated in a scheme, along with three other co-

conspirators, to smuggle controlled substances from Jamaica into

the United States, to store the substances in Maine, and from

there to eventually smuggle contraband drugs into Canada. With

Bowen's assistance, Ticchiarelli organized two boat trips to

-3-

Jamaica to pick up marihuana and a marihuana-based substance and

stored large quantities of these controlled substances in Maine,

for later export into Canada.

The illicit substances involved were marihuana and much

greater quantities of a black, tar-like marihuana-based

substance. In a consolidated appeal, Brown and Ticchiarelli

challenge the district court's determination during sentencing

that the tar-like substance in which they were trafficking was

"hashish oil."1 Both seek to be sentenced as though the

controlled substance were "marihuana." Prior to the sentencing

stage, their cases travelled different procedural routes.

Pursuant to a plea agreement, Ticchiarelli pled guilty

on September 14, 1995 to Counts One, Eight and Ten of a ten-count

indictment. Although these counts made specific reference to

"hashish oil," as part of his plea agreement Ticchiarelli did not

concede that the Schedule I controlled substance was "hashish

oil." Count One alleged a conspiracy to commit and the

commission of, with Bowen and three others, the following crimes

occurring between August 1994 and March 1995: importing a

Schedule I controlled substance ("hashish oil") derived from

marihuana into the United States in violation of 21 U.S.C. 952;

importing marihuana into the United States in violation of 21

U.S.C. 952; distributing the "hashish oil" intending that it

would be unlawfully imported, in violation of 21 U.S.C. 959(a)

 

1 As discussed infra, Bowen asserts additional claims not put 
forward by Ticchiarelli.

-4-

(1); possessing with intent to distribute a Schedule I controlled

substance ("hashish oil") derived from marihuana, as well as

possessing with intent to distribute marihuana, in violation of

21 U.S.C. 841(a)(1); exporting a Schedule I controlled

substance ("hashish oil") as well as marihuana from the United

States, in violation of 21 U.S.C. 953. Count Eight charged

Ticchiarelli with making false representations to the Customs

Service by presenting false identification, in violation of 18

U.S.C. 1001, and Count Ten recited the other counts in invoking

the criminal forfeiture provision of 21 U.S.C. 853.

The plea agreement signed by Ticchiarelli stated that

the Schedule I controlled substance of Count One was "hashish"

when processed into liquid form, but Ticchiarelli nowhere

conceded that the substance was "hashish oil," and the district

court reserved the issue of the precise identity of the substance

for determination at sentencing when it accepted the guilty plea.

Bowen, unlike Ticchiarelli and the other conspirators

named in Count One of the indictment, did not enter into a plea

bargain. On February 6, 1996, Bowen was convicted after a jury

trial on Counts One, Six and Seven. Counts Six and Seven charged

a second instance, in March 1995, of possession with intent to

distribute a Schedule I controlled substance ("hashish oil"), in

violation of 21 U.S.C. 841(a) and 841(b)(1)(B)(vii), and

possession with intent to distribute marihuana, in violation of

21 U.S.C. 841(b)(1)(D). The Presentence Investigation Report

(PSR) in Bowen's case states that the contested Schedule I

-5-

controlled substance was hashish oil. Bowen disputed that PSR

determination and contended that the Guideline's use of the term

"hashish oil" was unconstitutionally vague. Bowen sought to

consolidate his case with those of his co-conspirators with

respect to the issue of the nature of the controlled substance

referred to as "hashish oil" in the indictment, and as to the

legal validity of this allegedly ambiguous provision.

The cases were consolidated and on August 9, 1996, the

district court convened an evidentiary hearing to determine the

proper characterization of the controlled Schedule I substance

for the purposes of sentencing Bowen, Ticchiarelli, and another

co-conspirator. At the hearing, experts on each side offered

differing definitions of the term hashish oil. On October 2,

1996, the district court ruled that based on undisputed facts

regarding the physical appearance and chemical composition of the

substance, the substance fit within the ambit of the "ordinary

meaning" of hashish oil. See United States v. Ticchiarelli, 943 

F. Supp. 77, 83 (D. Me. 1996) (Order Determining the Nature of

the Controlled Substance for Purposes of Sentencing). The

district court also stated, however, that after considering

expert testimony proffered by the government and the defendants,

and after consulting further materials in order to ascertain the

meaning of the term "hashish oil," it had discovered that "there

is no scientific nor any universally accepted precise definition

of the term hashish oil." Id. at 82. 

Having found the controlled substance to be hashish

-6-

oil, the court established the base offense level for Bowen and

Ticchiarelli by following section 2D1.1(c): it multiplied the

quantity (measured by weight) of the "hashish oil" attributable

to the defendants by a factor of fifty, added that figure to the

amount of other marihuana attributable to them, and determined

the base offense level corresponding to the resulting, marihuana-

equivalent drug quantity figure.2 The base offense levels for

Bowen and Ticchiarelli were 36 each, and, ultimately, their total

offense levels were determined to be 38.

On appeal, both Ticchiarelli and Bowen assert that

Sentencing Guideline section 2D1.1's use of "hashish oil" without

a definition (prior to November 1995) was unconstitutional, and,

in the alternative, that the rule of lenity required that any

ambiguity as to the definition of "hashish oil" be resolved in

their favor -- that is, through a finding that the marihuana-

based substance was not hashish oil for sentencing purposes.

Bowen additionally claims error in the admission of certain

evidence in his criminal trial and asserts that the fifty to one

ratio between marihuana and hashish oil is arbitrary and

irrational, thereby violating the Due Process clause of the Fifth

 

2 The court determined that 393 kilograms of hashish oil and 48
kilograms of marihuana were attributable to the defendants. This
amounts, after the one to fifty conversion, to 19,698 kilograms
of marihuana equivalent, corresponding to a base offense level of
36. See U.S.S.G. 2D1.1(c). Had the substance been deemed 
marihuana instead, the corresponding base offense level for Bowen
and Ticchiarelli would have been 28. Given the total offense
levels of 38, this eight point increase translates into a minimum
difference in incarceration periods of 114 months for Bowen and
141 months for Ticchiarelli.

-7-

Amendment.

-8-

DISCUSSION DISCUSSION

I. The Meaning of "Hashish Oil" I. The Meaning of "Hashish Oil"

The district court's interpretation of the meaning of

"hashish oil" under the Sentencing Guidelines presents a legal

question over which we assume de novo review, as does the legal 

issue of whether the term was vague or ambiguous prior to the

1995 amendment. United States v. Camilo, 71 F.3d 984, 986 (1st 

Cir. 1996); United States v. Bohai Trading Co., Inc., 45 F.3d 

577, 580 (1st Cir. 1995). The sentencing court's findings of

fact regarding the properties of the controlled substance itself

are subject to review for clear error. Camilo, 71 F.3d at 986. 

The following factual findings regarding the controlled

substance are undisputed: (1) it is derived from marihuana plant

matter (cannabis sativa), and not from marihuana resin or

hashish; (2) it is a black or near-black substance resembling

road tar; (3) it is not pourable at room temperature; (4) it

contains tetrahydrocannabinol (THC) in the 13 to 16 percent

range; (5) it contains cannabinol and cannabidiol; (6) it

contains no fragments of vegetation perceptible to the naked eye;

(7) it contains chlorophyll and magnesium; (8) it originates in

Jamaica. See 943 F. Supp. at 78. The appeal turns on whether 

this substance can be said to be "hashish oil."

Under the amendments to the Sentencing Guidelines

effective November 1, 1995, the following definition of hashish

oil was provided:

Hashish oil, for the purposes of this
guideline, means a preparation of the

-9-

soluble cannabinoids derived from
cannabis that includes: (i) one or more
of the tetrahydrocannabinols (as listed
in 21 C.F.R. 1308.11(d)(25)), (ii) at
least two of the following: cannabinol,
cannabidiol, or cannabichromene, and
(iii) is essentially free of plant
material (e.g. plant fragments). 
Typically, hashish oil is a viscous, dark
colored oil, but it can vary from a dry
resin to a colorless liquid.

U.S.S.G. 2D1.1(c), Drug Quantity Table, Note (J) (Nov. 1995).

Prior to November 1995, the term "hashish oil" was

undefined in both the Code, see 21 U.S.C. 841(b)(1)(D), and in 

the Guidelines. Moreover, the legislative history of the

Comprehensive Crime Control Act of 1984, which first enacted the

fifty to one ratio and introduced the term "hashish oil" to the

Code, is silent as to the meaning of the term. See Pub. L. No. 

98-473, 98 Stat. 2030, 2070, 2086; S. Rep. No. 98-634 (1984);

H.R. Rep. No. 98-1030 (1984). Although the undisputed facts

regarding the substance at issue would appear to place it within

the current definition, this definition, constituting a

significant and substantive addition to the guidelines, cannot be

retroactively applied to these defendants. See United States v. 

S nchez, 81 F.3d 9, 12 (1st Cir. 1996) (Guideline amendment that 

is not a mere clarification, and that is not covered by the

policy statement of section 1B1.10, is not to be applied

retroactively). For example, this definition includes a "dry

resin" within the scope of the term "hashish oil," a matter

-10-

which, as discussed below,3 could not be considered part of the

core meaning of "hashish oil" prior to the amendment.

It is clear, however, that whether or not the substance

at issue is "hashish oil," it certainly qualifies as "marihuana"

under the Code:

The term "marihuana" means all parts of
the plant Cannabis sativa L., whether
growing or not; the seeds thereof; the
resin extracted from any part of such
plant; and every compound, manufacture,
salt, derivative, mixture or preparation
of such plant, its seeds or resin. Such
term does not include the mature stalks
of such plant, fiber produced from such
stalks, oil or cake made from the seeds
of such plant, or . . . [any preparations
thereof].

21 U.S.C. 802(16) (Supp. 1997). It is not disputed that the

substance at issue in this appeal falls within this broad, catch-

all definition of "marihuana." The question is whether it can

also be found to be "hashish oil" under the pre-amendment

Guidelines. Appellants raise several grounds for concluding that

it cannot. We need not address their contention that the term

"hashish oil" is void for vagueness, however, because our

conclusion that the application of the rule of lenity is

appropriate in this case provides the appellants the relief they

seek.

II. The Rule of Lenity II. The Rule of Lenity

Appellants contend that in the face of ambiguity

regarding the scope of the term "hashish oil," the district court
 

3 See infra discussion of applicability of rule of lenity for 
core meaning of hashish oil.

-11-

should have followed the rule of lenity by accepting the more

restricted definition of hashish oil offered by the defendants

and by sentencing the defendants as though the substance were

"marihuana" under the Guidelines.

As the Supreme Court has consistently held, the rule of

lenity commands that genuine ambiguities affecting a criminal

statute's scope be resolved in the defendant's favor. See, e.g., 

United States v. Lanier, 117 S. Ct. 1219, 1225 (1997); United 

States v. Nippon Paper Indus. Co., 109 F.3d 1, 7-8 (1st Cir. 

1997)(collecting cases). The important purposes served by the

rule of lenity include the following: "to promote fair notice to

those subject to the criminal laws, to minimize the risk of

selective or arbitrary enforcement, and to maintain the proper

balance between Congress, prosecutors, and courts." United 

States v. Kozminski, 487 U.S. 931, 952 (1988). However, the rule 

only "properly comes into play when, at the end of a thorough

inquiry, the meaning of a criminal statute remains obscure."

United States v. O'Neil, 11 F.3d 292, 301 n.10 (1st Cir. 1993). 

Put another way, the rule of lenity means that "the Court will

not interpret a federal criminal statute so as to increase the

penalty that it places on an individual when such an

interpretation can be based on no more than a guess as to what

Congress intended." Ladner v. United States, 359 U.S. 169, 178 

(1958).

We find that experts for both the government and the

defendants offered reasonable constructions of the term "hashish

-12-

oil" at the August 9, 1996 evidentiary hearing, and further find

that the legislative history provides no guidance as to the

term's meaning. Presented with a variety of educated guesses as

to the meaning of "hashish oil" -- that is, presented with a

genuine ambiguity -- we hold that the rule of lenity applies.

The defense expert, James Woodford, testified on the basis of his

experience as a chemist and as a drug testing expert that hashish

oil is a transparent, honey-colored oil produced in the process

of compressing hashish into bricks. Part. Tr. of August 9, 1996

Hearing, at 38-40. Woodford testified that hashish oil is a

liquid with high THC levels (around 40%) and that it is not a

tarry, thick substance. Id. On the other hand, a government 

expert, a forensic chemist with the Drug Enforcement Agency,

testified that the substance appeared to be hashish oil, for

hashish oil is a marihuana-derived substance that is chiefly

distinguished from marihuana by its lack of plant material and

cystolithic hairs, and that the controlled substance lacked

cystolithic hairs. Id. at 6-7. According to the government 

experts, "hashish oil" need not resemble other familiar oils that

are liquid at room temperature. The record indicates that the

substance, although undoubtedly a controlled substance, did not

have the slippery, viscous, or liquid properties of an "oil," at

least as that term is commonly used. This fact is, in our

opinion, critical to our conclusion that the rule of lenity

applies in this case.

Although no other circuit court has addressed this

-13-

issue, appellants draw our attention to two district court

decisions involving a similar tar-like marihuana-based substance

in which the courts, in the face of conflicting definitions of

hashish oil from experts, applied the rule of lenity. See United 

States v. Gravelle, 819 F. Supp. 1076, 1078-79 (S.D. Fla. 1993) 

(pursuant to rule of lenity, finding substance to be marihuana

rather than hashish oil); United States v. Schultz, 810 F. Supp. 

230, 234 (S.D. Ohio 1992) (pursuant to rule of lenity finding

substance to be hashish rather than hashish oil). Both cases

dealt with a thick, tarry, black substance that did not pour at

room temperature.

In United States v. Camilo, we held that the rule of 

lenity was not applicable where a defendant challenged an

enhanced sentence for trafficking in "crack" (as opposed to

"powder") cocaine. See 71 F.3d at 990 (rule of lenity not 

applicable because "crack in reality does differ from cocaine

powder," notwithstanding similar medical effects and identical

scientific composition). That case is distinguishable from the

instant appeal, because in Camilo we emphasized that one can 

clearly distinguish, as a practical matter, between crack and

powder cocaine. The meaning of the term "crack" was thus not

ambiguous. Here, "hashish oil," prior to the 1995 amendment,

presents a problem of definitional ambiguity, a problem to which

the rule of lenity clearly is addressed.

For lenity to be appropriate, genuine and

insurmountable doubt must exist as to whether Congress, in

-14-

enacting a higher penalty for "hashish oil," intended to include

this particular, tarry substance within its scope. The district

court, finding that "[t]he three experts presented by the parties

were as deficient on the subject of definition as Congress and

the Sentencing Commission," 943 F. Supp. at 79, surveyed a

variety of publications for assistance. See 943 F. Supp. at 80- 

82. The "ordinary meaning" of hashish oil that the district

court ultimately applied, however, did not represent a kind of

least common denominator among the various definitions it had

culled. Indeed, the publications the court cited include both

narrow and broad definitions of hashish oil, and the court opted

for a broader definition rather than a narrower one. Id. Even 

on the basis of the publications cited and quoted by the district

court in its order, we find that, at the very least, there exists

ambiguity as to whether "hashish oil": (a) must be a liquid (or

readily pourable, or capable of being administered in drops) at

room temperature; and (b) must have a THC level in a range

significantly higher than that of marihuana. We therefore

conclude that the rule of lenity should have been applied in this

case, requiring a narrower construction of "hashish oil." Had

the substance been a potent liquid, derived from cannabis, and

lacking plant material, then the rule of lenity would not have

been appropriate. Although, as the district court pointed out,

Bowen and Ticchiarelli should have known that they were

trafficking in a substance that could result in serious

penalties, as we have indicated, fair notice is not the sole

-15-

consideration motivating the rule of lenity.

II. Bowen's Other Claims II. Bowen's Other Claims

We need not dwell at length on Bowen's additional

claims. First, his request for a downward departure due to the

low THC levels of the substance is rendered irrelevant in light

of our holding that the rule of lenity applies. Second, he

challenges the constitutionality of the fifty to one conversion

ratio between hashish oil and marihuana under U.S.S.G. 2D1.1

and 21 U.S.C 841(b)(1) (D). In declining Bowen's invitation to

deem Congress' enactment of this ratio patently irrational, we

need only direct his attention to United States v. Singleterry, 

29 F.3d 733, 739 (1st Cir. 1994), which upheld a challenge to the

Guideline provision equating one gram of cocaine base with 100

grams of cocaine. Indeed, the fifty to one hashish oil ratio

presents a much more straightforward case for after-the-fact

rationalization: hashish oil can be expected to be more potent

and more easily transported than marihuana.

Finally, Bowen challenges the admission of a drug

ledger during his criminal trial. Even assuming, as Bowen

alleges, that the drug ledger confiscated at the time of his

arrest was not related to the conduct charged in the indictment,

and therefore should have been excluded as irrelevant, on

reviewing the record we find that any error was plainly harmless

and did not implicate a constitutional right. Given the varied

and strong proof, based on direct evidence, of Bowen's

participation in the conspiracy, we find the "weight of the

-16-

additional evidence overwhelming," and conclude that the same

verdict would almost certainly result from a new trial. United 

States v. Rose, 104 F.3d 1408, 1414 (1st Cir. 1997). Although 

the drug ledger was used by the prosecution to corroborate the

testimony of Bowen's co-conspirators, significantly, the

accomplice testimony was forcefully corroborated by other real

evidence and by the testimony of customs agents.

-17-

CONCLUSION CONCLUSION

For the foregoing reasons the sentences applied to the

appellants are vacated and the case is remanded for sentencing vacated remanded 

pursuant to this opinion.

-18-