**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond Edward DAVIS, Jr.,
Defendant–Appellant.**

No. 02–12804
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 5, 2002.

Chet Kaufman, Fed. Pub. Def., Tallahassee, FL, Elizabeth Timothy, Fed. Pub. Def., Pensacola, FL, for Defendant–Appellant.

Robert G. Davies, Pamela A. Moine, Asst. U.S. Atty., Pensacola, FL, for Plaintiff–Appellee.

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

The indictment in this case charged appellant, in Count I, with possession of a machine gun in February 1997 in violation of 18 U.S.C. §§ 922(*o*) and 924(a)(2), and, in Count II, with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and 924(a)(2). Following arraignment, appellant moved the court to suppress the firearm and other evidence seized from his trailer by law enforcement officers. The court held an evidentiary hearing on the motion and denied it. Appellant thereafter entered a conditional plea of guilty to the charges; he now appeals. He contends first that his convictions are invalid because, contrary to the district court's ruling, the search of his trailer was not supported by probable cause and exigent circumstances. He contends that his sentences should be vacated because the court erred in relying on a state violation-of-probation warrant to find that the instant offenses were committed while appellant was under "a criminal justice sentence," as provided by U.S.S.G. § 4A1.1(d) and 4A1.2. We consider these challenges in turn.

According to the record, Panama City Police Department (PCPD) officials were informed that a call received by the hotline for the Department of Children and Family Services (DCFS) indicated that appellant was holding captive in his trailer home a girl, age fifteen, to whom he was providing drugs and with whom he was having sexual intercourse. The caller also reported that appellant possessed guns and explosives. Two sets of PCPD officials went to appellant's trailer. The first set of officers refused to enter without a warrant. The second set of officers, including Agents Pitts and Lock of the PCPD, (1) went to appellant's residence three hours after the initial report was received, and (2) entered the residence without a warrant, fearing that the girl may be in physical danger. Based on observations during the initial search, Pitts and Lock obtained and executed two search warrants and recovered ammunition from appellant's resi-

dence. On the day after executing the second search warrant, PCPD officials were informed of a robbery progressing at appellant's residence. Upon questioning the perpetrators and receiving information that the trailer home contained a concealed firearm, PCPD officials obtained a third search warrant and recovered a fully automatic weapon.

Appellant contends that the district court erred in denying his motion to suppress because PCPD officials violated his Fourth Amendment rights by initially entering his home without a warrant. He says that the officials did not have probable cause to believe that a crime was being committed there, and no exigent circumstances justified a warrantless search because law enforcement officials (1) did not confirm the tip of possible illegal activity, (2) were informed that the child had arrived voluntarily, contrary to the tip, and (3) knew that no one was present in the trailer. Appellant further claims that the officers failed to establish an emergency justifying a physical intrusion without a warrant or probable cause. He maintains that (1) the district court did not find that probable cause existed for the warrantless entry, finding only that the situation constituted an emergency, and (2) the officers' actions were not reasonable because, unlike an average emergency, the officers used the instant emergency to justify a criminal investigation.

We review the district court's legal conclusions on Fourth Amendment claims *de novo*. *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir.1999). The district court's findings of fact are reviewed for clear error. *Id.*

The Fourth Amendment, which is applicable to the States via the Fourteenth Amendment, guarantees that individuals will be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Under the Fourth Amendment, searches and seizures "inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). A warrantless search or seizure of a home may be justified, however, where both probable cause and exigent circumstances exist. *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir.1983).

▮▮▮ "The exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). We have held that, "when exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir.2002). We explained that "[t]he most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life." *Id.* at 1335. The government bears the burden of proving that the exception applies and must establish both an exigency and probable cause. *Id.* at 1337. In emergencies, probable cause exists where law enforcement officials "reasonably believe" that someone is in danger. *Id.* at 1338.

▮▮▮ Evidence seized after an illegal seizure should be suppressed as the "fruit of the poisonous tree." *United States v. Bailey*, 691 F.2d 1009, 1012–13 (11th Cir.), *cert. denied*, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983). In determining whether evidence is "fruit of the poisonous tree" and, therefore, must be excluded, the relevant question is "whether, granting es-

tablishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The government may "purge the taint" by proving that there was a break in the causal link between the initial illegal search and the eventual seizure, such as by establishing that the evidence in question was seized pursuant to an independent source. *Bailey,* 691 F.2d at 1013. Under the "independent source" doctrine, the challenged evidence is admissible if it was obtained from a lawful source, independent of the illegal conduct. *United States v. Terzado–Madruga,* 897 F.2d 1099, 1113 (11th Cir.1990).

■ We have established the following guidelines for determining the validity of a warrant affidavit: (1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3) demonstration of the informant's veracity and basis of knowledge. *United States v. Martin,* 297 F.3d 1308, 1314 (11th Cir.2002). We have noted that there is no need to establish the informant's veracity if law enforcement officials have sufficient, independent corroboration of the information. *Id.*

Here, it is unclear whether the district court properly applied the exigent circumstances exception to deny appellant's motion to suppress. Although Pitts and Lock maintained that they entered appellant's trailer out of concern for the safety of the young girl, the situation does not seem to have been as urgent as the one in *Holloway.* There, a law enforcement official received two dispatch messages, alerting him that a 911 caller had reported hearing an argument and the noise of gunshots

coming from the defendant's home. *Holloway,* 290 F.3d at 1332–33. Upon arriving at the defendant's house, the officer secured three individuals found on the front porch and in the front yard of the residence, including the defendant. The officer then approached the house to check for victims, discovering a firearm and ammunition on the porch. After confiscating the weapon, he searched the house to discover possible victims; none were found. *Id.* We held that there was probable cause to believe that someone was in danger because of the 911 call, which was consistent with the scene upon the arrival of the law enforcement official. Noting that the need to verify the reliability of an informant is outweighed by the need for immediate action in an emergency, we explained that "the fact that no victims are found, or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful." *Id.* at 1339–40.

■ The caller in the instant case contacted the DCFS hotline, which does not indicate the kind of emergency situation implied when an individual calls 911 to report gunshots at a neighbor's house. In addition, unlike the caller in *Holloway,* the caller did not report any immediate danger. Moreover, Pitts and Lock (1) received conflicting information about whether the girl had arrived on her own, (2) had only vague reports that the girl may or may not be inside the trailer, and (3) observed that a window was open and could have been an exit for someone locked inside the trailer. This, coupled with the fact that there were no sounds indicating that anyone was inside the house, suggested that the report may not have been entirely accurate or that the girl was not in the kind of immediate danger suggested by reports of gunshots being fired. In addition, Pitts knew that other officers

previously had investigated the situation, finding that it was not urgent enough to enter appellant's residence without a warrant. Finally, three hours had passed between the time of the initial report and the eventual search, which seems to be a sufficient amount of time in which to have obtained a search warrant based on the information gleaned from appellant's neighbor and the caller.

On the other hand, the caller, who identified herself and explained how she knew of the purported victim, indicated that the girl was being held captive by appellant, who allegedly had drugs and firearms. This indicated that the girl's life possibly could have been in serious danger, especially because appellant allegedly had threatened to shoot anyone attempting to remove her from the trailer. Moreover, although vague, the information from appellant's neighbors could have supported the accuracy of the account that the girl still was inside the trailer. In addition, the three-hour delay between the call and the initial search was occupied in continued investigation of the report. The reaction of all parties involved also indicates that the situation indeed was perceived as an urgent one in which the girl's safety was of utmost concern.

The facts are close, as the district court recognized, and it is possible that the exigent circumstances exception did not apply to the initial search. *See Holloway,* 290 F.3d at 1338. However, even if we assume that the initial search was invalid and that anything related to that search was the fruit of the poisonous tree, the gun's seizure was valid because it had been purged of the "taint" of the allegedly illegal search. In other words, the firearm, which was recovered pursuant to an independent source, i.e., the third warrant, was admissible because the causal link between the first set of searches and the final

search was broken. *See Terzado–Madruga,* 897 F.2d at 1113; *Bailey,* 691 F.2d at 1013. As Pitts and Lock stated, the third warrant was based on the information given by the perpetrators of the robbery at appellant's trailer home, rather than on the allegedly illegal observations from the earlier searches.

Under the relevant inquiry, which should center on the validity of the third warrant, it appears that the warrant was valid. Even if all of the facts regarding the initial entry and the two subsequent searches are deleted from the third warrant application, it includes sufficient facts to support probable cause that a crime, namely possession of a firearm, had been committed at appellant's residence. For example, the warrant application clearly indicated that PCPD officials had been informed through a DCFS report that appellant, a convicted felon, was in possession of firearms. It also stated that the report that appellant possessed a firearm was confirmed by the two individuals, who were attempting to remove items from his trailer.

Based on this information, the warrant was valid because the facts recited in the application established (1) a link between appellant and the illegal activity, possession of a gun, and (2) the veracity of the original informant, whose information was confirmed by independent accounts of the perpetrators of the robbery occurring on the next day. *See Martin,* 297 F.3d at 1314. Because probable cause supported the third warrant, independent of the observations gained from the allegedly illegal initial entry, the warrant was a legal, independent source, which purged the seized evidence of any taint from the initial entry. *See Terzado–Madruga,* 897 F.2d at 1113. In sum, the district court correctly denied appellant's motion to suppress.

We consider now the challenge to his sentences. Appellant contends that the district court erred in finding that he committed the instant offenses while under a criminal justice sentence. He asserts that the district court should not have relied on a possibly stale bench warrant for a probation violation that Maryland authorities had chosen to forego. Noting that we have no binding law on the issue, he maintains that the government presented no evidence to prove that he intentionally was absent from Maryland in an attempt to evade authorities. He submits that (1) the district court relied on speculation to find the Maryland warrant valid, and (2) because of the undue delay of Maryland officials in enforcing the warrant, it was "stale." Accordingly, the district court incorrectly added two points to determine his criminal history.

We review a district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts·*de novo*. *United States v. Mullens*, 65 F.3d 1560, 1563–64 (11th Cir.1995), *cert. denied*, 517 U.S. 1112, 116 S.Ct. 1337, 134 L.Ed.2d 487 (1996). When calculating a defendant's criminal history, the sentencing court must add two points "if the defendant committed the instant offense ... while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). Cross-referencing U.S.S.G. § 4A1.2(m), the relevant commentary states that an outstanding violation warrant is included in the definition of a "criminal justice sentence." U.S.S.G. § 4A1.1, cmt. 4. Section 4A1.2(m) states that if a violation warrant is outstanding against the defendant when he commits the instant offense, the defendant is considered to be under a criminal justice system sentence, even if the actual sentence would have expired were it not for the warrant. U.S.S.G. § 4A1.2(m).

■ We have yet to decide whether a warrant no longer is outstanding and, thus, may not be considered a "criminal justice sentence" for purposes of § 4A1.1(d) because it is (1) stale due to an unreasonable delay in its execution, or (2) forfeited due to the lack of diligence of state authorities in executing it. We now find persuasive the reasoning of the other circuits that have dealt with this issue, each of which has held that, as long as the government proves that there exists an outstanding warrant, the district court need not inquire into the warrant's validity before applying the two-point enhancement under § 4A1.1(d). For example, according to the Third Circuit, "[t]he plain language of the Guidelines indicates that two points are to be added whenever an outstanding warrant is in existence, regardless of whether the warrant is stale pursuant to state law at the time of sentencing, and irrespective of whether state authorities may have been lax in attempting to execute the warrant." *United States v. Elmore*, 108 F.3d 23, 27 (3rd Cir.1997), *cert. denied*, 522 U.S. 837, 118 S.Ct. 110, 139 L.Ed.2d 63 (1997). Similarly, the Fifth Circuit has held that the state authorities's lack of diligence in executing a warrant does not affect the applicability of the two-point enhancement under § 4A1.1(d). *United States v. Anderson*, 184 F.3d 479, 481 (5th Cir.1999), *cert. denied*, 528 U.S. 1091, 120 S.Ct. 824, 145 L.Ed.2d 694 (2000). Citing *Anderson*, the First Circuit has held that a district court need not inquire into an existing warrant's applicability before applying § 4A1.1(d). *United States v. Mateo*, 271 F.3d 11, 16 (1st Cir.2001).

Section 4A1.1(d) also supports the holdings in these cases. After all, the guidelines are clear that, if the defendant has an outstanding violation warrant, a sentencing court must add two points to his criminal

history. *See* U.S.S.G. § 4A1.1(d). The unequivocal provision does not indicate that such a violation warrant also must be proven as valid. In fact, under § 4A1.2(m), a violation warrant is considered a criminal justice sentence, even if the underlying probation term would have been over were it not for the outstanding warrant. *See* U.S.S.G. § 4A1.2(m). That provision seems to indicate that, regardless of how long a warrant has been outstanding, as long as a violation warrant exists, it is a criminal justice sentence for purposes of the criminal history calculation. *See id.*

Here, the government presented evidence that there was an outstanding violation warrant against appellant. Under the reasoning of *Anderson* and *Elmore,* it was irrelevant whether the warrant became invalid due to the lack of diligence by Maryland authorities to execute it by retrieving appellant from Florida after his 1995 arrest. *See Anderson,* 184 F.3d at 481; *Elmore,* 108 F.3d at 27. Similarly, the government was not required to prove that the warrant was not stale. *See Elmore,* 108 F.3d at 27. In other words, the district court correctly added two points to appellant's criminal history category.

Appellant suggests that there exists a split among the circuits on the issue of whether a stale warrant may be used to add two points to a defendant's criminal history category, citing an unpublished case from the Fourth Circuit and *United States v. Camilo,* 71 F.3d 984 (1st Cir. 1995), *cert. denied,* 517 U.S. 1161, 116 S.Ct. 1555, 134 L.Ed.2d 657 (1996). A review of *Camilo,* however, indicates that his argument is fatally flawed. In *Camilo,* the defendant argued that the government was required to prove that a warrant was valid under state law before that warrant could be used under § 4A1.1(d). *Camilo,* 71 F.3d at 987. The *Camilo* court ultimately reserved the decision of whether state or federal law applied, finding that Camilo's warrant was valid under either analysis. In discussing the validity of the warrant under federal law, the First Circuit noted that "it may be argued that a delay in the execution of a violation warrant may be so unreasonable that the defendant cannot be said to be under a criminal justice sentence." *Id.* at 988. That court found, however, that because Camilo was responsible for the delay in the execution of the warrant, such an unreasonable delay argument would not be applicable to him. *Id.*

Although *Camilo* seems to indicate that a stale violation warrant may render a defendant no longer under a criminal justice sentence, that is not the holding of the case. Rather, the issue for the *Camilo* court was whether the government must prove the validity of the violation warrant under state law. Moreover, in the later *Mateo* case, the First Circuit directly addressed the issue at hand by holding that a sentencing court "may give weight to an outstanding warrant without inquiring into the validity of that warrant." *Mateo,* 271 F.3d at 16. As such, *Mateo* makes clear that it is not necessary to prove the validity of the underlying warrant before applying § 4A1.1(d). Accordingly, we adopt the reasoning presented by the First, Third, and Fifth Circuits and affirm appellant's sentence.

AFFIRMED.