Zullo, petitioner.

JOHN N. ZULLO, petitioner.

Worcester. April 5, 1995. - July 26, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Parole. Imprisonment*, Parole. *Practice, Criminal*, Parole. *Due Process of Law*, Parole.

Discussion of opinions in other jurisdictions that have considered challenges to the enforcement of parole violations on the ground that delay in enforcement was unreasonable. [875-876]

The record of a habeas corpus proceeding did not permit a determination as a matter of law that delay by the Massachusetts Parole Board in serving a parole revocation warrant was or was not unreasonable or whether the prisoner was unfairly prejudiced by the board's conduct: the matter was remanded for further consideration of those issues. [876-878]

PETITION filed in the Superior Court Department on March 4, 1993.

The case was heard by *Herbert F. Travers, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*William J. Meade*, Assistant Attorney General, for the respondent.

*James R. Pingeon* for the petitioner.

WILKINS, J. In 1979, the petitioner John N. Zullo, on parole from his Massachusetts sentence for armed robbery, violated a condition of his parole by leaving the State without permission. In 1992, Zullo was arrested in Texas on a parole revocation warrant and transferred to Massachusetts where, after revocation of his parole, he has been serving the balance of his sentence.

Zullo filed a petition for a writ of habeas corpus challenging the Commonwealth's right to require him to serve the

balance of his Massachusetts sentence. A judge of the Superior Court ordered that Zullo's petition be dismissed, concluding that the undisputed documentary record showed no basis for relieving Zullo from serving the balance of his Massachusetts sentence. On Zullo's appeal, the Appeals Court decided otherwise, holding that, in the circumstances, the Massachusetts Parole Board (board) had impliedly waived jurisdiction over Zullo. *Zullo, petitioner*, 37 Mass. App. Ct. 371, 375-376 (1994). We granted the application for further appellate review filed by the respondent, the superintendent of the Massachusetts Correctional Institution (M.C.I.), Gardner. The appeal is properly here on further review of the Superior Court order.

This court has not had occasion to consider the standard that should be applied in determining whether the belated service of a parole revocation warrant results in the board's loss of the authority to seek revocation of parole. We granted the application for further appellate review to consider that question and to consider aspects of the Appeals Court opinion that the respondent challenges.

The essential facts are as follows. In May, 1975, Zullo pleaded guilty to armed robbery in Massachusetts and was sentenced to serve a ten-year sentence at M.C.I., Concord. In January, 1979, while on parole from that sentence, Zullo left the Commonwealth without reporting a change of address to his parole officer, an admitted violation of the terms of his parole. A parole revocation warrant was issued promptly. Authorities in Oregon learned of that warrant in March, 1979, when police in Beaverton, Oregon, began investigating Zullo in connection with a burglary. In March, 1980, Zullo was charged with burglary, and the next month Oregon officials notified the board that they were holding Zullo. The board then informed Oregon authorities that it lacked funds "to extradite [the] subject." Zullo was indicted for the Oregon burglary in April, 1980. He fled to Colorado before trial, where he was arrested on a fugitive from justice warrant and returned to Oregon. Before returning Zullo to Oregon, Colorado authorities had advised the board that they had Zullo in

their possession, and the board again had declined to serve
the parole revocation warrant on him. Zullo pleaded guilty to
the Oregon charge and was imprisoned there until he was
paroled in February, 1983. The board did not lodge a de-
tainer against Zullo while he was imprisoned in Oregon, nor
did it inquire concerning the length of Zullo's Oregon sen-
tence. After Zullo had been convicted in Oregon but before
he was sentenced, someone in Oregon advised the board that
Oregon would "get back to us [the board] on sentence
length." The record does not indicate that the board heard
from Oregon authorities again. At no time did the board at-
tempt to serve Zullo while he was on parole. Oregon released
Zullo from his parole in February, 1988. Zullo was returned
to Massachusetts, as indicated above, following his 1991 ar-
rest in Texas on misdemeanor charges. We shall assume, as
did the Appeals Court, that Zullo was aware that Massachu-
setts authorities knew where he was, but decided not to serve
a parole revocation warrant on him after his arrest and sen-
tence in Oregon.

No statute governs the issue before us. Circumstances con-
cerning the issuance and execution of a parole revocation or
revocation warrant are stated in G. L. c. 127, § 149 (1994
ed.). If a parole violator is serving a sentence or sentences
elsewhere when such a warrant is served, service is not effec-
tive until "the expiration of any additional sentences by pa-
role or otherwise." The Appeals Court seems to have con-
cluded that service of a parole revocation warrant on Zullo
would not have been effective until Zullo was discharged
from his Oregon parole in 1988. In our view, the expiration
of a sentence "by parole" implicitly refers to the end of im-
prisonment by release on parole. At such a point in 1983,
Oregon would have held Zullo on any Massachusetts warrant
on file, and the board would have had to decide whether to
return Zullo to Massachusetts or let him go. In any event,
the board could have served the parole revocation warrant at
any time after Zullo left the Commonwealth. In the absence
of statutory guidance as to when the board should have

served the parole revocation warrant, we turn to general principles.

Opinions in other jurisdictions that have considered challenges to the enforcement of parole violations against persons who failed to report their changes of address have focused largely on the question whether delay in enforcement of the parole revocation warrant was unreasonable. See, e.g., *United States* v. *Hill*, 719 F.2d 1402, 1405 (9th Cir. 1983) ("a warrant for arrest based on a probation or parole violation should be executed within a reasonable time after issuance"); *Simon* v. *Moseley*, 452 F.2d 306, 309 (10th Cir. 1971) (same); *Greene* v. *Michigan Dep't of Corrections*, 315 F.2d 546, 547 (6th Cir. 1963) (parole authorities must proceed with reasonable diligence to execute warrant). The weight of authority is that, if the whereabouts of the parole violator was known or was readily ascertainable and an "unreasonable" amount of time elapsed during which the State authorities took no action to enforce the parole violation, the State has waived its right to execute the balance of the parolee's prison sentence and the State courts have no "jurisdiction" to revoke parole. See, e.g., *United States* v. *Hill*, *supra* (unexplained delay of more than two and one-half years in execution of warrant was unreasonable where probation office knew probationer's address; lower court lost jurisdiction of probation violation); *United States* v. *Hamilton*, 708 F.2d 1412, 1415 (9th Cir. 1983) (three years too long in circumstances); *Greene* v. *Michigan Dep't of Corrections*, *supra* (failure to act with reasonable diligence may result in waiver of violation and loss of jurisdiction); *United States* v. *Gernie*, 228 F. Supp. 329, 338-339 (S.D.N.Y. 1964) (delay of over eleven years in service of warrant for violation of probation was unreasonable where probationer could have readily been located and apprehended at any time by exercise of reasonable diligence). The question of reasonableness is one of fact, and an appellate court should decide the issue only if the answer to the reasonableness question is clear as a matter of law.

Probationers are entitled to due process of law with respect to the termination of their release on probation. *Morrissey* v. *Brewer*, 408 U.S. 471, 480-482 (1972). In other cases involving prison sentences, where no statute was controlling, "we have been guided by considerations of fairness and a proper sense of justice." *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978).

Prejudice to the parolee has not been a significant factor in most jurisdictions in deciding the effect of delay in executing a parole revocation warrant. The opinions simply focus on the reasonableness of the delay. There are some exceptions. See, e.g., *Simon* v. *Moseley, supra* at 310 (Hill, J., dissenting) (delay alone will not suffice; actual prejudice is focal point of inquiry); *Shelton* v. *United States Bd. of Parole*, 388 F.2d 567, 574 (D.C. Cir. 1967) (same); *State* v. *Hernandez*, 97 N.M. 28, 30 (Ct. App. 1981) (judge must consider effect of delay on probationer).

In many instances, fairness would seem to require consideration of (a) the extent to which the parolee reasonably relied on the inaction of the enforcing authorities, and (b) the prejudice that the delay in the attempted enforcement may have caused to the parolee in defending against the attempt to revoke parole or otherwise. In this case, for example, Zullo knew that on two occasions the board had learned where he was and had declined to serve the parole revocation warrant. After his release from prison in Oregon, Zullo went on with his life, starting a business and raising children with his common law wife. Zullo asserts that his revocation hearing was affected because certain records had been destroyed. These questions of reasonable reliance and prejudice depend on facts that are not conclusively resolved on the record before us. Although waiver does not require proof of prejudice to the probationer, proof of prejudice is important as an independent consideration in any determination whether a probationer has been treated unfairly and is therefore not to be incarcerated for the unserved balance of a sentence.

The board's delay in this case may well have been unreasonable, with the consequence that it waived its right to re-

quire Zullo to serve any portion of the sentence on which he had been paroled. It appears that the board knew where Zullo was or with reasonable diligence could have located him when it was notified in April, 1980, that Zullo had been charged in Oregon; when he was arrested in Colorado shortly thereafter; during his period of incarceration in Oregon (1980-1983); and during his period of parole on the Oregon sentence (1983-1988). The board could have served the parole revocation warrant while Zullo was incarcerated and the warrant would have served as a detainer, leading to Zullo's availability for transfer to Massachusetts when Oregon was either finished with Zullo or agreed to his transfer here. After Oregon released Zullo and while he remained on parole, it appears that the board easily could have found Zullo and served the parole revocation warrant, but it did not do so. On the other hand, the record does not support the Appeals Court's suggestion (*Zullo, petitioner, supra* at 374) that during the four years (1988-1992), after Zullo was released from parole on his Oregon sentence and before he was located by the board, Zullo's whereabouts were readily ascertainable. Certainly these circumstances raise the question whether the board acted with reasonable diligence, or, put another way, whether the board's delay in executing the parole revocation warrant was reasonable, a question that we cannot answer on this record. We do not join the Appeals Court's view that the only crucial dates for assessing the reasonableness of the board's delay are the four years after Zullo was released from parole on his Oregon sentence and before the board learned of his whereabouts in Texas. *Id.* at 373-374.

The record does not permit a determination as a matter of law that the board's delay in serving the parole revocation warrant was or was not reasonable or whether Zullo was unfairly prejudiced by the board's conduct. Either theory, if proved by Zullo by a preponderance of the evidence, would justify denial of the revocation of Zullo's parole. The case is remanded to the Superior Court for proceedings consistent

with this opinion (unless, as may be the case, Zullo has been released from custody and the case is moot).

*So ordered.*