## Commonwealth *vs.* Vith Ly.

Suffolk. October 4, 2007. - November 6, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cordy, & Botsford, JJ.

*Practice, Criminal,* Execution of sentence. *Due Process of Law,* Sentence.

Execution of a criminal defendant's sentence after an unexplained delay of sixteen years on the part of the Commonwealth would violate due process and principles of fundamental fairness. [20-23]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on August 13, 2007.

The case was heard by *Cowin,* J.

*Fawn D. Balliro,* Assistant District Attorney (*Alice E. Casey,* Assistant District Attorney, with her) for the Commonwealth.

*Daniel P. Flaherty* for the defendant.

Greaney, J. In 1990, following a jury trial in the Superior Court, the defendant was convicted of kidnapping, indecent assault and battery (three indictments), assault with intent to rape, and rape (two indictments). The judge sentenced the defendant to three five-year terms and three twenty-year terms to be served concurrently at the Massachusetts Correctional Institution at Concord (MCI, Concord). The defendant was incarcerated for a period of two months, but he was released after a single justice of the Appeals Court allowed his motion to stay the execution of his sentences pending appeal. In 1991, in an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court vacated one of the defendant's convictions for indecent assault and battery and affirmed his remaining convictions. *Commonwealth* v. *Vith Ly,* 31 Mass. App. Ct. 1105 (1991). We denied the defendant's application for further appellate review. On issuance of the rescript, however, the stay of execution of the sentences was not vacated and the sentences were not put into effect.

On June 26, 2007, the Commonwealth filed a motion to

execute the sentences.[1] In response, the defendant (now in custody) filed a motion entitled "Defendant's Motion to Dismiss [the indictments on which his sentences are based] as a Result of the Violation of His Speedy Sentencing and Due Process Rights." A judge in the Superior Court (who was the trial judge) considered the motions and ordered that the defendant's sentences be "deemed served" (thus, implicitly, denying the Commonwealth's motion and granting the defendant relief in a form different from that requested by his motion). The judge stayed his order to allow the Commonwealth time to appeal, and the Commonwealth sought relief before a single justice of this court, by means of a petition pursuant to G. L. c. 211, § 3. The single justice denied relief under the petition, but allowed the Commonwealth's request that the stay ordered by the judge remain in effect until further order of court. The Commonwealth then appealed the single justice's disposition to the full court. We conclude that execution of the defendant's sentences, after an unexplained delay of sixteen years on the part of the Commonwealth to have the sentences executed, would violate due process and principles of fundamental fairness.

1. The following facts are drawn from the judge's written findings, affidavits submitted by the defendant and his counsel in opposition to the Commonwealth's motion (the affidavits are not disputed by the Commonwealth and, it may be inferred, they were accepted by the judge), and other undisputed evidence in the record. Born in 1961, the defendant immigrated to the United States from Cambodia in 1982, after spending two years in a refugee camp in Thailand. In 1985, he settled in Lowell and met a woman whom he considers his wife. On April 18, 1990, as stated above, he was sentenced to concurrent prison

---

[1]The defendant also had been sentenced, on the kidnapping conviction, to a term of from eight to ten years to be served at the Massachusetts Correctional Institution (MCI) at Cedar Junction, suspended for two years. For reasons that are not clear in the record, a handwritten notation on the back of the defendant's kidnapping indictment indicates that this conviction was dismissed in 1991. The dismissal does not appear on the case docket, and the notation may have been a ministerial error. Over the objection of defense counsel, the judge hearing arguments on the Commonwealth's motion to execute the sentences (who also was the trial judge) ordered the clerk to make an appropriate correction to the record. We do not concern ourselves further with the matter, because it has no independent relevance to our disposition of this appeal.

terms on convictions of indecent assault and battery, indecent assault and battery with intent to rape, and rape. The convictions were based on episodes occurring between September 7 and September 15, 1989, between the defendant and a woman, also from Cambodia, who had been friendly with the defendant and his wife. At the sentencing hearing, the defendant's motion to stay sentencing pending his appeal was denied. The sentences were imposed and the defendant was taken into custody.

Affidavits submitted by the defendant and defense counsel indicate that at the time this case began and was tried the defendant understood almost no English and nothing about the legal system in Massachusetts. While in jail following his sentencing, the defendant was contacted by a "Chinese organization" that hired an appellate lawyer from Boston on his behalf. The defendant reports having little contact with the Boston lawyer, but states that he received assurances from the Chinese organization that "everything was going to be alright with [his] case."

In June, 1990, a single justice of the Appeals Court allowed the defendant's request for a stay of execution of his sentences, and he was released pending resolution of his appeal. Although his release was conditioned on an agreement to report to a probation officer "as directed," the defendant was never ordered to do so. In 1991, in a memorandum and order pursuant to its rule 1:28, the Appeals Court overturned one of the defendant's convictions of indecent assault and battery and upheld his remaining convictions. This court denied the defendant's application for further appellate review.

Despite the affirmance of his convictions, the defendant was never reincarcerated and remained at liberty for sixteen years. During that time, he lived in the Lowell area, worked steadily as a machine operator or personal computer board manufacturer for local companies, and raised three sons (one now in college). The defendant believed that the case was over and that "everything was alright."[2]

Twice during the intervening years, the defendant was the

---

[2]The defendant's convictions put his immigration status in jeopardy. After appearing before a judge in the United States Immigration Court in Boston in October, 2002, the defendant was allowed to remain in the United States. The defendant testified before the immigration judge that his family in Cambodia

subject of criminal charges. In 1999, he was brought before a judge in the Lowell Division of the District Court Department and charged with domestic assault and battery. The charge was dismissed. In April, 2001, the defendant was arrested by a Dracut police officer for reckless operation of a motor vehicle and assault and battery. Four days later, before a judge in the Lowell District Court, the defendant pleaded guilty to one charge of assault and battery and received a suspended sentence. On April 20, 2007, a State trooper traveling on Route 495 ran a routine registration plate check on the defendant's motor vehicle and determined that the registered owner of the motor vehicle was in violation for failing to register as a sex offender. The defendant's vehicle was stopped, and the defendant was charged, in the Ayer Division of the District Court Department, with failing to register as a sex offender.[3] It was not until pretrial preparations for this case were underway that an assistant district attorney requested the defendant's jail records from Concord, and, on their receipt, noticed that the defendant had never been reincarcerated following his unsuccessful appeal in 1991. The Commonwealth promptly filed its motion to execute the sentences and, pursuant to that motion, the defendant was summonsed into court on June 27. He appeared voluntarily and has been in custody ever since.[4] We now consider the merits of this appeal.

was of Chinese origin and wealthy, and some members had held high positions in the public security system before the Khmer Rouge came into power. For these reasons, his entire family, including his mother, father, and siblings, was killed by the Khmer Rouge when he was approximately fourteen years of age. The defendant was forced to walk to a labor camp where, for four years, he worked for twelve hours a day with little food. The immigration judge found the defendant's testimony "entirely credible" and his fears for his safety if returned to Cambodia "subjectively truthful." The judge concluded that the defendant was eligible for protection in the form of a deferral of removal under the United Nations Convention Against Torture. In February, 2004, the judge's decision was affirmed, without decision, by the board of immigration appeals.

[3]The defendant states in his affidavit that he once received a request for information from the sex offender registry board and responded in writing to the regional office in Salem. The record indicates that the charge of failing to register as a sex offender is still pending.

[4]When the defendant was taken into custody in connection with this case, the Federal government (immigration and customs enforcement, formerly immigration and naturalization services) placed an immigration detainer on the

2. Rule 31 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 902 (1979), sets forth the process whereby a judge, in his or her discretion, may order that the execution of a defendant's sentence be stayed pending the final determination of an appeal. The rule makes no mention, however, of the process by which a stay of execution, once granted, may be revoked after an appellate court's affirmation of a defendant's conviction. See *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851, 854 (1980). At the hearing on the motions, the Commonwealth was unable to answer, to the judge's satisfaction, his question as to what process was in place in the district attorney's office in 1991 to ensure that a convicted offender (here, a convicted sex offender), at liberty pending appeal, was returned to custody, with promptness, after the affirmance, by an appellate court, of the judgment or judgments of conviction. Neither the rule, nor our cases, indicate whether, in the normal course of events (now or then), the clerk's office informally notifies the district attorney of its receipt of the rescript, or whether the district attorney must bring the matter to the court's attention by way of a formal motion to revoke the stay of execution of sentence. Neither occurred in this case. It is clear, nonetheless, that a defendant who unsuccessfully appeals from a criminal conviction bears no burden to come forward voluntarily to be taken into custody and incarcerated. There is no apparent fault to be attributed to the defendant in this case.

The defendant's motion to dismiss, based on alleged violations of his rights to speedy sentencing and to due process under the Federal and State Constitutions, raises an issue appropriate for consideration under G. L. c. 211, § 3,[5] and the Commonwealth's appeal is timely.

---

defendant. What the future holds for the defendant with respect to his immigration status is beyond the scope of this case.

[5]It would have been just as appropriate for the defendant (who is in custody) to have filed his motion as one seeking postconviction relief under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). The defendant could not, however, have filed a motion to revise or revoke his sentence under Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979), on the ground that it was unfair or illegally imposed, because the sixty-day period (far exceeded here) within which such a motion must be filed is absolute under the rule. See Mass. R. Crim. P. 46 (b), 378 Mass. 922 (1979) (court not permitted to extend time for taking action under rule 29); *Commonwealth* v. *Layne*, 386 Mass. 291, 295-296

In reviewing the motion, we consider, as did the judge, the totality of the defendant's circumstances over the past sixteen years. See *United States* v. *Martinez*, 837 F.2d 861, 864 (9th Cir. 1988); *Commonwealth* v. *Blair*, 699 A.2d 738, 741 (Pa. Super. Ct. 1997). The defendant has raised three sons, worked without interruption at various jobs, and paid his taxes every year. He has done nothing to cause immigration authorities to attempt to deport him, and in the only immigration proceedings involving his status, immigration authorities decided that he was entitled to remain in the United States. The defendant has lived with his family in Lowell for the entire period and has never attempted to flee or avoid the attention of law enforcement authorities. We consider specious the Commonwealth's suggestion that the defendant has demonstrated no prejudice that would befall him should execution of his sentences be ordered at this time.

We note with disfavor that the defendant's conduct has not been trouble free. Despite subsequent encounters with the criminal justice system, however, which (as the judge remarked) should have motivated someone in the district attorney's office to examine his criminal record and discover the fact that the full sentences had not been served for multiple convictions of serious, and violent, offenses, the district attorney did nothing for sixteen years. If there is fault to be attributed, it lies at the Commonwealth's doorstep, at least for its failure to bring to the court's attention, in 1991, by way of motion or otherwise, the immediate necessity to revoke the stay of execution of the defendant's sentences, and, perhaps, its failures, in 1999 and 2001, to examine the defendant's criminal history carefully (which could have alerted someone to the oversight).[6] The Commonwealth offers no explanation for these failures, other

(1982); *Commonwealth* v. *Burrone*, 347 Mass. 451, 452-453 (1964) (judge has no power to extend sixty-day time period allowed to revise or revoke sentence under G. L. c. 278, § 29, as amended by St. 1957, c. 302, statutory rule then in effect). Further, the purpose of a rule 29 motion "is to permit a judge to reconsider the sentence he has imposed and determine, in light of the facts as they existed at the time of sentencing, whether the sentence was just." *Commonwealth* v. *White*, 436 Mass. 340, 344-345 n.3 (2002), quoting *Commonwealth* v. *Layne*, *supra* at 295. There is no claim that the defendant's original sentences in this case were not just at the time that they were imposed.

[6] In 1991, a prisoner serving a twenty-year sentence at MCI, Concord,

than to concede that there was an "inadvertent error." The judge concluded that "the fair and the just result is to permit the defendant to be at liberty." We agree.

It is a basic principle that a defendant sentenced to incarceration has a due process right to serve the sentence promptly and continuously, rather than "in installments." *White* v. *Pearlman,* 42 F.2d 788, 789 (10th Cir. 1930) (premature release). Otherwise, "[a] prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him." *Smith* v. *Swope,* 91 F.2d 260, 262 (9th Cir. 1937) (unexecuted sentence). Consistent with these cases is the proposition that the execution of a defendant's sentence, including one which has been stayed pending the resolution of an appeal, as a matter of fundamental fairness, must be pursued with reasonable diligence. See *Piper* v. *Estelle,* 485 F.2d 245, 246 (5th Cir. 1973), quoting *Shields* v. *Beto,* 370 F.2d 1003, 1004 (5th Cir. 1967) ("Fourteenth Amendment . . . requires that 'action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice' "). We conclude that requiring the defendant to serve his sentences, at this point in time and on these facts, would violate the concept of fundamental fairness that is at the core of due process. See *State* v. *Roberts,* 568 So. 2d 1017, 1019 (La. 1990) (due process and fundamental fairness required release of prisoner [on parole] when government failed to execute sentence for six years). Other courts considering circumstances like this have reached the same result based on different theories. See *Johnson* v. *Williford,* 682 F.2d 868, 871-874 (9th Cir. 1982) (estoppel); *Shields* v. *Beto, supra* at 1005 (waiver of State's jurisdiction over defendant); *United States* v. *Merritt,* 478 F. Supp. 804, 806 (D.D.C. 1979) (credit for time erroneously at

would usually have been eligible for parole after two years. The likelihood is raised, therefore, that anyone looking into the defendant's criminal records may have assumed (incorrectly) that the defendant had served a term of two years at MCI, Concord, and had been released on parole. On one occasion while in court, the defendant recounts, he heard someone say that his past criminal case was closed. On another occasion, the defendant states that he told a probation officer that he had never been on parole. The probation officer called the defendant a "liar." The defendant's board of probation record indicates that all cases against the defendant, with the exception of the most recent charge of failing to register as a sex offender, are closed.

liberty); *Lanier* v. *Williams*, 361 F. Supp. 944, 947 (E.D.N.C. 1973) (detrimental reliance).

This court addressed at length, in *Aime* v. *Commonwealth*, 414 Mass. 667, 673-675 (1993), key differences between the constitutional protections against improper governmental action known as "substantive due process" and "procedural due process." We have decided this case under a traditional procedural due process analysis, similar to that used in determining whether a defendant has been denied the constitutional right to a speedy trial. See *Barker* v. *Wingo*, 407 U.S. 514, 530-533 (1972) (balancing length of delay; reasons for delay; whether defendant was at fault in not asserting right sooner; and prejudice, if any, to defendant); *Commonwealth* v. *Lauria*, 411 Mass. 63, 67 (1991); *Commonwealth* v. *Edgerly*, 390 Mass. 103, 104 (1983). See also *Mathews* v. *Eldridge*, 424 U.S. 319, 332-335 (1976) (individuals must be accorded procedural due process when deprivation of liberty is at stake; determination of what process is due requires weighing individual's liberty interest, risk of erroneous deprivation of that interest, and government's interest in administration of its affairs). We need not decide, therefore, whether incarcerating the defendant (at this point in time and on these facts) would "shock the conscience," thereby violating his right to substantive due process as well. See *Youngberg* v. *Romeo*, 457 U.S. 307, 316 (1982), quoting *Greenholtz* v. *Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (Powell, J., concurring in part and dissenting in part) ("Liberty from bodily restraint always has been recognized as the core of liberty protected by the [d]ue [p]rocess [c]lause from arbitrary governmental action"); *Aime* v. *Commonwealth*, *supra* at 676 ("The right to be free from governmental detention and restraint is firmly embedded in the history of Anglo-American law"); *Smith* v. *Swope*, *supra* (incarceration of defendant after years of liberty "would give [the government] power more arbitrary and capricious than any known in the law").

3. The order entered in the county court further staying entry of the "deemed served" order in the Superior Court is vacated. A judgment is to enter in the county court which (1) denies the relief requested by the Commonwealth in its petition under G. L. c. 211, § 3; (2) vacates the order in the Superior Court

stating that the defendant's sentences are "deemed served"; and (3) directs entry in the Superior Court of an order denying the Commonwealth's motion to execute the defendant's sentences with prejudice and deeming that the defendant is discharged from any present or future custody on those sentences.

*So ordered.*