NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-226

DARRIEN GOETZENDANNER,[1] petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The petitioner appeals from the denial by a Superior Court judge of his petition for a writ of habeas corpus under G. L. c. 248, § 1, and from the denial of his motion for relief from that order pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974) (rule 60 [b]). The petitioner contends that he is entitled to immediate release from serving the balance of his sentences on his 1983 convictions because, following convictions of intervening offenses he committed while out on parole in 1993, this court's belated modification of his sentencing scheme in Goetzendanner v. Superintendent, Mass. Correctional Inst., Norfolk, 71 Mass. App. Ct. 533, 541 (2008) (Goetzendanner I), violated double jeopardy principles and clearly established Federal law. The petitioner also argues that the Commonwealth's

_____

[1] Also known as Jahrab S. Allah. The petitioner reportedly legally changed his name around 2001. As is our custom, we use the name that appears on the complaint.

ten-year delay in implementing the change in his sentencing structure waived its right to enforce the remainder of his 1983 sentences, and the failure to schedule a timely final parole revocation hearing for those sentences violated his due process rights.  We affirm.

Background.  We summarize the procedural history of this case that led to our decision in Goetzendanner I, and to the present issues on appeal.

In February 1983, the petitioner was convicted of, among other crimes, armed assault with intent to rob and murder.  He was ordered to serve concurrent sentences (reformatory sentences),[2] the longest of which was twenty years.

Eight years later, in June 1991, the petitioner was released on parole from these sentences.  The petitioner was charged with new crimes while out on parole, including multiple counts of aggravated rape and kidnapping.  In response, the parole board (board) provisionally revoked the petitioner's

---

[2] A "reformatory sentence," also known as a "Concord sentence," was a "sentencing option widely used by Superior Court judges in the 1980's," until its abolition in 1994.  Commonwealth v. Thurston, 53 Mass. App. Ct. 548, 554-555 (2002).  This type of sentence involved "the imposition of an apparently long sentence on an individual deemed capable of rehabilitation . . ., not to the State prison at M.C.I., Walpole (now called Cedar Junction) but rather to the State 'reformatory' at M.C.I., Concord, with parole eligibility arising after a small fraction . . . of the stated sentence pursuant to parole board policies and regulations."  Id. at 555.

parole, and issued a parole violation warrant on March 31, 1992. Pending the outcome of the petitioner's new criminal charges, the parole violation warrant was lodged against the petitioner as a detainer.[3]

On February 5, 1993, the petitioner was convicted of assault and battery by means of a dangerous weapon, two counts of aggravated rape, and kidnapping (intervening offenses),[4] for which he received concurrent sentences, including committed sentences of from twenty to thirty years in prison.[5]  At this time, the petitioner had about four years left to serve on his reformatory sentences.  See Goetzendanner I, 71 Mass. App. Ct. at 541.  The Department of Correction (department) deemed the effective date of return of the parole violation warrant as February 5, 1993, and "treated [the petitioner] as a returned parole violator with new sentences to be served after completion of the reformatory sentences."  Id. at 535.  "On this basis, the department calculated that [the petitioner] completed his

---

[3] A detainer is "[a] writ authorizing a prison official to continue holding a prisoner in custody."  Black's Law Dictionary 543 (10th ed. 2014).

[4] "Any sentence for a crime committed while the petitioner is on parole, that is imposed prior to service of the parole violation warrant, is an intervening sentence."  Goetzendanner I, 71 Mass. App. Ct. at 534 n.3.

[5] The sentencing judge ordered that the intervening sentences "be served from and after the exp[i]ration of all previous sentences which [the petitioner] has been ordered to serve."
Goetzendanner I, 71 Mass. App. Ct. at 540.

reformatory sentences on February 1, 1997, and on that date formally discharged him [of those sentences]," and "invoked the intervening sentences." Id. at 535-536.

In 2003, the petitioner filed a petition for a writ of habeas corpus in the Superior Court. The petitioner sought immediate release on the grounds that he was serving illegal or improperly imposed sentences because the law required him to first complete his intervening sentences before serving the remainder of his reformatory sentences. See Goetzendanner I, 71 Mass. App. Ct. at 534. A Superior Court judge denied the petition. Id. The petitioner appealed.

In an April 2008 decision, this court denied the petitioner's request for habeas corpus relief, and instead treated his petition as a claim for declaratory relief. Goetzendanner I, 71 Mass. App. Ct. at 534-535. We held that "the department improperly executed [the petitioner's] sentences when it required [the petitioner] first to serve the four years remaining on his reformatory sentences and, on February 1, 1997, discharged him of those sentences, prior to invoking his intervening sentences." Id. at 541. We vacated the judgment and remanded the matter to the Superior Court, ordering that a declaration enter that the petitioner "began serving his 1993 intervening sentences on February 5, 1993, with 320 days of credit, and that the remaining time of his reformatory sentences

4

will not commence until the expiration by parole or otherwise of his intervening sentences."[6]  Id.  On August 8, 2008, the Norfolk Superior Court issued a modified judgment in accordance with this court's directive.

Over ten years later, in November 2018, the department reportedly notified the board that the petitioner would complete his intervening sentences on February 28, 2019.  Soon thereafter, in January 2019, the board amended the date of the petitioner's parole violation warrant for his reformatory sentences in accordance with the 2008 modified judgment.  The warrant was then lodged as a detainer behind the petitioner's intervening sentences.  When the petitioner's intervening sentences expired, on February 28, 2019, the service of the parole warrant was deemed effective, and the petitioner remained in custody.

Soon thereafter, the board scheduled a final parole revocation hearing for the petitioner's reformatory sentences, on April 5, 2019.[7]  The hearing was postponed at the petitioner's

_____

[6] The petitioner sought further appellate review, which the Supreme Judicial Court denied.  Goetzendanner v. Superintendent, Mass. Correctional Inst., Norfolk, 451 Mass. 1107 (2008).

[7] "The purpose of the final revocation hearing is to determine, whether the parolee violated one or more conditions of parole; if a violation occurred, whether parole status should be finally revoked; and, if parole status is revoked, whether release to the community is appropriate."  120 Code Mass. Regs. § 303.16(1) (2017).

request.[8]  Later that month, on April 19, the petitioner filed a second petition for a writ of habeas corpus in the Superior Court seeking his immediate release.  The petition raised four grounds for relief:  (1) the board's failure to schedule a timely final parole revocation hearing on the petitioner's reformatory sentences in 2008, at the same time of his initial parole release hearing on the intervening sentences, violated due process; (2) the Commonwealth waived its right to execute the parole violation warrant and impose the balance of the petitioner's reformatory sentences when it failed to implement the modification in his sentencing scheme for over ten years; and (3) this court's 2008 decision in Goetzendanner I, restructuring the petitioner's sentencing scheme, violated double jeopardy and clearly established Federal law.  A Superior Court judge denied the petition.  The petitioner appealed.

In March 2021, the petitioner filed a "motion for relief from order" in the Superior Court, arguing that relief was warranted under rule 60 (b) because the judge that ruled on his habeas petition erred in finding that his double jeopardy argument lacked merit because the length of his sentences had not increased due to the change in his sentencing structure.

---

[8] The petitioner's final parole revocation hearing was held in May 2020.  The petitioner was later released from custody on parole supervision on November 16, 2020.

6

According to the petitioner, the duration of his reformatory sentences increased by nearly two years because of this court's 2008 decision. The same Superior Court judge also denied this motion, and the petitioner again appealed. The petitioner's appeals from the order denying his April 2019 writ of habeas corpus petition and the order denying his March 2021 motion for rule 60 (b) relief have been consolidated here.

Discussion. "A habeas corpus petitioner must establish that (1) there has been a violation of the State or Federal Constitution or laws; (2) the violation has deprived him of his personal liberty; and (3) he is entitled to immediate release from the custody of the respondent." Goetzendanner I, 71 Mass. App. Ct. at 538. The petitioner asserts that he is entitled to immediate release from serving the balance of his reformatory sentences on the same grounds set forth in his motions in the Superior Court, listed supra. We address each in turn.

1. Due Process. a. Final parole revocation hearing. The petitioner first argues that he was deprived of a constitutionally protected liberty interest secured under the due process clause of the Fourteen Amendment when the board failed to schedule a timely final parole revocation hearing,[9] as required by applicable regulations.

_____

[9] "The Fourteenth Amendment [to the United States Constitution] prohibits any State from depriving a person of life, liberty, or

7

The parties agree that under 120 Code Mass. Regs. § 303.18(2) (1997),[10] the petitioner was entitled to a final parole revocation hearing on his reformatory sentences in 2008,[11] at the same time of his initial parole release hearing for his intervening sentences. See Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983) ("[A]gency regulations have the 'force of law'" [citation omitted]). The petitioner alleges that the ten-year delay in holding his final parole revocation hearing denied him the protections set forth in Morrissey v. Brewer, 408 U.S. 471, 488-489 (1972), including the right to a revocation hearing "within a reasonable time after [being] taken into

---

property without due process of law" (citation omitted). Butler v. Turco, 93 Mass. App. Ct. 80, 83 (2018). "A liberty interest may arise from the Constitution itself, or it may arise from an expectation or interest created by State laws or regulations." Id., and cases cited. Generally, in the prison context, liberty interests are limited to "freedom from restraint which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Id., quoting Sandin v. Conner, 515 U.S. 472, 484 (1995).

[10] "Where the parolee is serving an intervening sentence, the Massachusetts Parole Board schedules the final parole revocation hearing at the same time as the initial parole release hearing for that intervening sentence unless the Board Members choose, by office vote, to conduct a revocation hearing at an earlier time." 120 Code Mass. Regs. § 303.18(2) (1997). The current regulations employ essentially the same language, with one material difference being the use of the words "shall schedule." See 120 Code Mass. Regs. § 303.17(2) (2017).

[11] The petitioner was offered a final parole revocation hearing on his reformatory sentences in April 1994, pursuant to the original parole violation warrant, which this court later found to be ineffective. See Goetzendanner I, 71 Mass. App. Ct. at 540. The petitioner refused to appear for the hearing, and the board denied parole.

8

custody." Id. at 488.  The due process procedures discussed in Morrissey, supra at 489, however, concerned the accuracy of the factual determination of a violation.[12]  Here, the gravamen of the petitioner's claim is that, had his final parole revocation hearing been timely scheduled (or at least held sometime before the expiration of his intervening sentences), the board may have elected to terminate his reformatory sentences or have them run concurrent with his intervening sentences.  Thus, the issue is not that the petitioner was denied due process in defending against the revocation of his parole,[13] see United States v. Throneburg, 87 F.3d 851, 853 (6th Cir. 1996) ("due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation"), but rather, that he was denied opportunities

---

[12] Those minimum due process procedures included "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . .; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey, 408 U.S. at 489.

[13] The basis of the revocation of the petitioner's parole on his reformatory sentences was his convictions of the intervening offenses, which included aggravated rape and kidnapping.  As argued by the board, given these new criminal convictions, the revocation of the petitioner's parole status was all but certain.  See 120 Code Mass. Regs. § 303.22(4) (2017) (parole revocation determination based on preponderance of evidence standard).

to request that the board terminate his reformatory sentences or permit him to serve his sentences concurrently.

We have previously suggested that, "[u]pon a liberal reading" of the Supreme Court's decision in Moody v. Daggett, 429 U.S. 78 (1976),[14] an individual might, "on particular facts," be able to establish a due process violation from a delayed parole revocation determination based on prejudice arising from a missed opportunity to secure parole for an intervening sentence. Smith v. State Parole Bd., 17 Mass. App. Ct. 145, 151-152 (1983). However, that is not this case.

While we do not condone the significant delay in holding the petitioner's final revocation hearing, in the circumstances presented, see Emma v. Massachusetts Parole Bd., 488 Mass. 449, 457 (2021) ("due process is flexible and calls for such procedural protections as the particular situation demands" [citation omitted]), we "conclude that it did not 'amount to legal prejudice that permits a conclusion that a due process violation . . . occurred" (citation omitted). Doucette v. Massachusetts Parole Bd., 86 Mass. App. Ct. 531, 538 (2014). The petitioner's assertion of prejudice rests primarily on

---

[14] "[T]here is no constitutional right to a prompt parole revocation hearing when the parolee is serving an independent intervening sentence in the same jurisdiction." Smith v. State Parole Bd., 17 Mass. App. Ct. 145, 151 (1983), quoting Hopper v. United States Parole Comm'n, 702 F.2d 842, 845 (9th Cir. 1983).

10

speculation over decisions that the board may have made --
decisions that, on this record, were not likely to come to
fruition.[15]  The petitioner had no right to serve his sentences
concurrently.  See Commonwealth v. Collins, 31 Mass. App. Ct.
679, 684 (1991).  Nor did he have a liberty interest in a future
grant of parole.  See Doe v. Massachusetts Parole Bd., 82 Mass.
App. Ct. 851, 858 (2012).  Even if we were to conclude that the
petitioner's due process rights were infringed due to the
prolonged delay of his final revocation hearing, the petitioner
has not cited any authority to support his claim that he is
entitled to immediate release from serving the balance of his
reformatory sentences in these circumstances.[16]  See Stewart,

---

[15] The board revoked the petitioner's parole on at least three
separate occasions between 1985 and 1991.  See Goetzendanner I,
71 Mass. App. Ct. at 535 n.5.  Given the severity of the
petitioner's intervening offenses, which served as the basis for
the fourth revocation of his parole, it is unlikely that the
board would have been inclined to grant his request to serve his
reformatory sentences concurrently with his intervening
sentences, particularly where the sentencing judge had specified
that the intervening sentences (including twenty to thirty
years) be served consecutive to any other sentence the defendant
had been ordered to serve.  The petitioner's claim of prejudice
is further belied by the fact that he refused to attend his
initial parole release hearing on his intervening sentences in
July 2008, and subsequently waived or refused to appear before
the board for each of his annual review hearings from 2009 to
2018.
[16] Although the loss of opportunities to seek reparole and
concurrent sentences from the board is certainly evidence of
actual, not just theoretical, prejudice, we conclude that, on
this record, it is "not so substantial as to justify the
[petitioner's] release" from serving the remainder of his
sentences.  Commonwealth v. Blake, 454 Mass. 267, 281 (2009)

11

petitioner, 411 Mass. 566, 569 (1992).  Accordingly, habeas

relief is not permitted.  See Sheriff of Suffolk County v.

Pires, 438 Mass. 96, 100 (2002) (habeas relief "available only

where granting the writ would result in the petitioner's

immediate release from custody").

b.  Waiver.  Next, the petitioner asserts that the board --

or, broadly speaking, the Commonwealth -- waived its right to

enforce his parole violation warrant and impose the balance of

his reformatory sentences when it waited over ten years to amend

the petitioner's parole violation warrant and implement the

modification of his sentencing structure.  Again, we disagree.

To support this claim, the petitioner first directs us to

Zullo, petitioner, 420 Mass. 872 (1995).  There, the Supreme

Judicial Court considered whether "the belated service of a

parole revocation warrant results in the board's loss of the

authority to seek revocation of parole."  Id. at 873.  The court

explained that the weight of authority from other jurisdictions

that have addressed the issue was:

> "if the whereabouts of the parole violator was known . . .
> and an 'unreasonable' amount of time elapsed during which
> the State authorities took no action to enforce the parole
> violation, the State has waived its right to execute the
> balance of the parolee's prison sentence and the State
> courts have no 'jurisdiction' to revoke parole."

(Gants, J., concurring).  See also Commonwealth v. Burhoe, 3
Mass. App. Ct. 590, 595 (1975) (alleged loss of opportunities
for parole and concurrent sentences because of pretrial delay
"too speculative and insubstantial" to warrant dismissal).

12

Id. at 875.[17]  This principle is not applicable in the instant case.

Here, the petitioner's parole violation warrant was lodged as a detainer behind his intervening sentences.  As we stated in Goetzendanner I, 71 Mass. App. Ct. at 540, "[a]ny purported service of the parole warrant [before the petitioner completed his intervening sentences] was ineffective."  See G. L. c. 127, § 149.[18]  Once the petitioner's intervening sentences concluded, the warrant was executed, and the petitioner remained in custody.  There was thus no delay in the service or enforcement of the warrant.  Further, absent from the record is evidence that the petitioner reasonably relied on any government inaction,[19] or that he suffered prejudice warranting the relief

---

[17] The court emphasized two relevant factors for consideration: "(a) the extent to which the parolee reasonably relied on the inaction of the enforcing authorities, and (b) the prejudice that the delay in the attempted enforcement may have caused to the parolee in defending against the attempt to revoke parole or otherwise."  Zullo, petitioner, 420 Mass. at 876.  A third consideration was the reasonableness of the delay.  Id. at 877.

[18] "Service of the parole violation warrant shall be made effective forthwith upon arrest and imprisonment of the parole violator unless he is convicted of commission of a crime or found guilty of violating the conditions of federal or another state's parole or probation, then service of said parole violation warrant shall not be effective until the expiration of any additional sentences by parole or otherwise."  G. L. c. 127, § 149.

[19] The petitioner contends that during the ten-year delay at issue, his parole officer repeatedly told him that he had completed his reformatory sentences and would not have to serve them again.  Although we appreciate the frustration this may

13

he seeks.  Cf. Commonwealth v. Vith Ly, 450 Mass. 16, 22

(2007);[20] Zullo, petitioner, 420 Mass. at 876.  There was no

waiver here.

3.  Remaining claims.  Finally, the petitioner argues that

this court's 2008 decision, correcting his sentencing scheme to

require that he serve the remainder of his reformatory sentences

after the completion of his intervening sentences, violated

have caused, this is not the type of reliance contemplated to
warrant the removal of the board's jurisdiction to revoke
parole.  Cf. Zullo, petitioner, 420 Mass. at 876.  Moreover,
this court's 2008 decision should have placed the petitioner on
notice that he would serve the remainder of his reformatory
sentences once his intervening sentences expired.  See
Goetzendanner I, 71 Mass. App. Ct. at 541.

[20] Vith Ly, 450 Mass. at 22, on which the petitioner relies, is
also inapposite.  In that case, the defendant's State prison
sentences were stayed pending an appeal that was ultimately
unsuccessful.  See id. at 16-17.  Due to an error, the stay was
not lifted, and the Commonwealth did not seek to execute the
defendant's sentences until sixteen years later.  Id. at 21.  In
the interim, the defendant lived in the community, where he
maintained steady employment, raised three children, and
believed that his "case was over."  Id. at 18, 21.  The Supreme
Judicial Court held that the enforcement of the defendant's
sentences after such an "unexplained delay" violated due process
and principles of fundamental fairness.  Id. at 17.  In
contrast, here, there has been no showing of fundamental
unfairness or substantial prejudice in the board's failure to
promptly amend the petitioner's parole violation warrant.  The
petitioner remained in lawful custody on his intervening
sentences throughout the delay at issue.  Once the petitioner's
intervening sentences expired, the service of the parole
violation warrant became effective, as required by statute.  See
G. L. c. 127, § 149.  And, contrary to the petitioner's
assertion, as explained at pages forty-seven through forty-nine
of the board's brief, the duration of his sentences was not
increased because of any inaction by Commonwealth authorities.

14

double jeopardy and clearly established Federal law.[21]  It is well settled that a petition for a writ of habeas corpus "cannot be employed as a substitute for ordinary appellate procedure" (citation omitted).  Sheriff of Suffolk County, 438 Mass. at 99. The petitioner therefore may not use a habeas petition to collaterally attack this court's 2008 decision.  See Kauffman, petitioner, 413 Mass. 1010, 1011 (1992) (writ of habeas corpus "may not be used to raise issues that should have been raised on appeal").  Because a petition for a writ of habeas corpus is not a proper vehicle to bring these claims,[22] we decline to address them here.[23]  See Doyle v. Commonwealth, 472 Mass. 1002, 1003

---

[21] The petitioner also sought a writ of habeas corpus in the United States District Court for the District of Massachusetts. A Federal District Court judge denied the petition, in which the petitioner raised, among other claims, that this court's 2008 decision violated double jeopardy.

[22] The petitioner's assertion that this court's 2008 decision violated art. 30 of the Massachusetts Declaration of Rights is also not properly before us.

[23] We briefly note that the petitioner's reliance on Commonwealth v. Selavka, 469 Mass. 502, 509 (2014), in support of his double jeopardy claim is misplaced.  Selavka, supra at 510-514, addressed whether the long-delayed correction of an illegal sentence that imposed new burdens on a defendant violated the prohibition against multiple punishments for the same crime. Unlike in Selavka, supra at 514, here, the petitioner's sentences were legal, and no new burdens or punishments were imposed.  The finality in the petitioner's overall sentencing scheme did not change.  All that changed was the sequence in which he served his sentences.  See Goetzendanner I, 71 Mass. App. Ct. at 541.  The petitioner received credit for each day that he originally (improperly) served toward his reformatory sentences, which were eventually applied to his intervening sentences following the Superior Court's issuance of the modified judgment in 2008.  Finally, as noted supra, the

15

(2015), and cases cited.  Since the petition for a writ of habeas corpus was properly denied, the judge did not err in denying relief from that order.

<u>Order denying petition for writ of habeas corpus affirmed</u>.

<u>Order denying rule 60 (b) motion affirmed</u>.

By the Court (Vuono, Sullivan & Singh, JJ.[24]),

*Joseph F. Stanton*

Clerk

Entered: June 8, 2023.

---

petitioner was put on notice by this court's 2008 decision that he would resume service of his reformatory sentences once his intervening sentences expired.  Any alleged expectation of finality in his original (improperly executed) sentences would not have been reasonable.

[24] The panelists are listed in order of seniority.

16